Karen Loxley Trosdal WILLIAMS and Pamela Lynah Trosdal, By and Through her Guardian and next friend, Don F. SHARPLEY and Trust Company of Georgia Bank of Savannah, N.A., as Administrator of the Estate of Reidar A. Trosdal, Jr., Plaintiffs,

v.

UNITED STATES of America, Defendant.

Cynthia C. COOK, Plaintiff,

v.

UNITED STATES of America, Defendant and Third-Party Plaintiff,

v.

TRUST COMPANY OF GEORGIA BANK OF SAVANNAH, N.A., as Administrator of the Estate of Reidar A. Trosdal, Jr., Third-Party Defendant.

Civ. A. Nos. 482–535, 483–085.

United States District Court,
S.D. Georgia,
Savannah Division.

Dec. 30, 1983.

William T. Moore, Savannah, Ga., for plaintiffs.

Asst. U.S. Atty. Kenneth Etheridge, Savannah, Ga., Stephanie Grogan, Departmental Atty., Dept. of Justice, Washington, D.C., for defendant.

## ORDER

ALAIMO, Chief Judge.

### INTRODUCTION

This action is currently before the Court awaiting the completion of discovery and pretrial matters. Though no motions are pending in the case, the parties have submitted to the Court proposed findings of fact and conclusions of law which raise significant questions as to the Court's jurisdiction in this case. Pursuant to the power vested in it by Fed.R.Civ.P. 12(h), as well as its inherent obligation to examine its own jurisdiction, *State of Alabama ex rel. Baxley v. Woody*, 473 F.2d 10, 12 (5th Cir.1973); *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.1981), the Court now considers those questions and issues the following Order.

### I. FACTS

The plaintiffs initiated these actions to recover damages incurred when a private powerboat operated by Reidar Trosdal, Jr., struck a mooring dolphin in the Wilmington River near the Town of Thunderbolt in Chatham County, Georgia. Trosdal was killed in the accident, while the lone passenger in the craft, plaintiff Mrs. Cynthia Cook, suffered serious injuries. Trosdal was survived by two daughters, who are the plaintiffs in action CV 482–535.

The Wilmington River is a part of the Atlantic Intracoastal Waterway ("ICW") and is maintained by the Army Corps of Engineers. In 1944, Congress appropriated funds for the general improvement of the ICW. Some of that money was spent by the Corps on the construction of mooring dolphins near various bridges along the waterway. These dolphins are composed of several telephone pole-like pilings, leaning toward a center piling and lashed or banded together at the top. At the time they were erected, the dolphins provided a mooring point for barges and other vessels

while awaiting their turn to pass under the suspension bridges.

The dolphin which the Trosdal boat struck was one of six dolphins originally placed to the south of the Memorial Bridge in Thunderbolt. At that time, the bridge at Thunderbolt was a "swing bridge," the center section of which would pivot 90° to allow ships to pass through the causeway. In the 1950's, the bridge was replaced by the extant Memorial Bridge, a draw-type which elevates to allow boats to pass. Over the years, the Corps had removed the other five dolphins as they lost their usefulness to modern marine traffic on the Wilmington. The last such removal occurred in 1978 when the Savannah District Corps of Engineers determined that the dolphin directly north of the dolphin here in issue had become a hazard to navigation—the cable binding the pilings together had broken, allowing the poles to fall into the channel.

It is the policy of the Corps to leave in place those dolphins which remain serviceable and provide a temporary tie-up for traffic on the waterway. Indeed, there is evidence that the remaining Memorial Bridge dolphin is still used by shrimp boats, dredges and private craft as they navigate the channel. According to the plaintiffs, it is the Corps' policy of leaving these dolphins in the ICW which led directly to the accident underlying this suit.

Plaintiffs allege that the dolphin left near the Memorial Bridge formed an obstruction to navigation which the Corps was obligated to remove from the ICW under the Rivers and Harbors Act[s] of 1890 and 1899, 33 U.S.C. §§ 403, 409, 414 (1976) or, in the alternative that the U.S. Coast Guard was obligated to mark the dolphin for the aid of navigation under 14 U.S.C. § 86 (1976).

Trosdal's surviving children seek damages for the pain and suffering inflicted upon Trosdal just prior to his death by drowning, the loss of Trosdal's future contribution to his estate and their loss of the society of their father. Plaintiff Cook has sued for damages including medical expenses incurred by her, compensation for her pain and suffering and the loss of wages resulting from her own injuries. Plaintiffs seek to hold the United States liable for these injuries through the jurisdiction created by the Suits in Admiralty Act ("SAA"), 46 U.S.C. § 742 (1976). In the event that the SAA does not provide them with proper jurisdiction for their claims, plaintiffs attempt to proceed under the Federal Tort Claims Act, 28 U.S.C. § 1346(b).

These facts are undisputed by the parties. As suggested by the defendant United States in the parties' Consolidated Pretrial Order, there is a question under these facts whether the Court has jurisdiction to consider plaintiffs' claims. Specifically, the United States avers that: (1) the Government did not waive its immunity to tort suits for discretionary governmental functions when it enacted the Suits in Admiralty Act; (2) the actions of the Corps of Engineers and the Coast Guard with regard to the Memorial Bridge dolphin in issue were purely discretionary acts; therefore, (3) the Court has no power to evaluate those governmental actions under the SAA.

## II. DISCUSSION

### (A) Immunity Under the SAA

The Suits in Admiralty Act was originally enacted in 1920 to provide a cause of action *in personam* against the United States for damages caused by its merchant vessels.

> In cases where if such a vessel were privately owned or operated, or if such cargo were privately owned or possessed, or *if a private person or property were involved,* a proceeding in admiralty could be maintained, any appropriate nonjury proceeding *in personam* may be brought against the United States....

46 U.S.C. § 742 (emphasis supplied). When the United States entered the merchant shipping field during World War I, sovereign immunity barred any action against the Government. The SAA was passed to facilitate the free passage of Government

ships while giving to those victims of wrongful actions by the Government, when acting as a shipper, an opportunity for some judicial relief. *United States v. Continental Tuna Corp.*, 425 U.S. 164, 170–71, 96 S.Ct. 1319, 1323–1324, 47 L.Ed.2d 653 (1976).

The history of litigation under the SAA over the next forty years is fraught with confusion. Admiralty plaintiffs found it especially difficult to determine which forum should properly hear their claims. Both the SAA and the Public Vessels Act, 46 U.S.C. § 781 (1976), authorized suits in admiralty to proceed in federal district court, while the Tucker Act, 28 U.S.C. § 1346(a)(2), allowed plaintiffs with contract claims in excess of $10,000 to bring actions only in the Court of Claims.

> A plaintiff with a contract claim against the United States for more than $10,000 often found himself in a difficult position. He had to choose between proceeding in the district court under one of the admiralty Acts, and proceeding in the Court of Claims under the Tucker Act. And he had to choose his forum wisely, for cases were not transferable between the district courts and the Court of Claims, and an incorrect choice could result in the applicable statute of limitations having run by the time the error was discovered. The solution of filing claims in both the district court and the Court of Claims was unavailable because under 28 U.S.C. § 1500, the Court of Claims has no jurisdiction over any claim that is the subject of a pending suit in any other court.

*United States v. Continental Tuna Corp., supra* at 173, 96 S.Ct. at 1325.

Congress responded to this problem in 1960 by amending the SAA in two ways. First, the language "if a private person or property were involved" was added (*see* highlighted statute above). Second, the language in the jurisdictional section of the Act which required a vessel to be "employed as a merchant vessel" was deleted. *Id.* at 177, 96 S.Ct. at 1327. These amendments were designed to alleviate some of

the technical distinctions which had confused the courts and litigants as to the proper scope of jurisdiction under the SAA. S.Rep. No. 1894, 86th Cong., 2d Sess. 1, *reprinted in* 1960 U.S.Code Cong. & Ad. News 3583.

Nothing in the legislative history indicates motivation for the amendments beyond Congress' intent to allow the free transfer of cases between the Court of Claims and the district courts and the clarification of the jurisdiction enjoyed by those courts under the SAA and other admiralty legislation. Nevertheless, consideration of the phrase "or if a private person or property were involved" in the Act has led some courts to divine a different purpose to the amended SAA.

Early among such efforts came the Fifth Circuit Court of Appeals' decision in *De Bardeleben Marine Corp. v. United States*, 451 F.2d 140 (5th Cir.1971). In Judge Brown's opinion in *De Bardeleben*, "[h]ad the sole purpose of the [amending] legislation been to clarify the confusing language of the old SIA [*sic*] this would have been better done by modifying the old section 742 to contain a clear definition of merchant, public, vessels and cargoes plus a delineation of contract claims growing out of Governmental shipping operations." 451 F.2d at 145. Thus, Judge Brown set out to find what more logical meaning might be given to the statute.

Relying on the holding in *Reconstruction Finance Corp. v. J.G. Menihan Corp.*, 312 U.S. 81, 84, 61 S.Ct. 485, 486, 85 L.Ed. 595 (1941), Judge Brown began by recognizing a trend against sovereign immunity in favor of liberal construction of congressional waivers of immunity. *De Bardeleben, supra* at 146. Because the amending language of the SAA provided a clear meaning on its face, the court found it unnecessary to read into the Act any exceptions to its ostensible "waiver of immunity" beyond those provided by Congress. That is, the court specifically refused to incorporate into the Act those exceptions to Government liability set out in the Federal Tort Claims Act. *Id.* Those ex-

ceptions include an exemption for discretionary action by the Government.[1]

The Fifth Circuit concluded that the plain meaning of the SAA amendments was to "assimilate the Government to the private person in relation to any or all transactions giving rise to liability in Admiralty." *Id.* In short, Congress intended the new SAA to be a waiver of all governmental immunity to suits in admiralty.

It is worth noting that, although the *De Bardeleben* decision construed the SAA to be a complete waiver of governmental immunity, that issue was not actually before the court. The plaintiff in *De Bardeleben* had navigated his boat into hazardous waters by following incorrectly marked U.S. Coast and Geodetic Survey charts. 451 F.2d at 141. It was not the Survey's decision to publish those charts which gave rise to plaintiff's cause of action, then, but the Government's apparently negligent drafting of those maps.

Plaintiff's complaint thus arose from governmental action which would not ordinarily be entitled to the traditional immunity from suit which protects discretionary activity. Once the Government did exercise its discretion by deciding to publish those charts, it was bound not to mislead mariners relying on them for navigational assistance. *Id.* at 148–49. Given this factual basis for the opinion in *De Bardeleben*, those portions of the Fifth Circuit's opinion addressing the waiver of sovereign immunity for discretionary functions have been considered mere dictum. *Canadian Transport Co. v. United States*, 663 F.2d 1081, 1085 (D.C.Cir.1980); *Bearce v. United States*, 614 F.2d 556, 559 (7th Cir.1980); *Gercey v. United States*, 540 F.2d 536, 539 (1st Cir.1976); *Rappenecker v. United States*, 509 F.Supp. 1024, 1027 (N.D.Cal. 1980).

Cases which have followed the Fifth Circuit's interpretation of the SAA have generally also involved facts which did not raise the question of immunity for discretionary functions. For example, in *Roberts v. United States*, 498 F.2d 520 (9th Cir. 1974), plaintiffs were the widow and surviving children of a navigator of an airplane which crashed on its approach to a federally controlled airport in Okinawa. The complaint alleged that the negligence of the Air Force personnel directing the landing from the ground caused the accident. *Id.* at 522. While the assumption of the duty to control that airport was an exercise of policy discretion on the part of the Air Force, the actual ministerial functions of the air controllers were not. They were bound to perform their assumed duties with due diligence and could be held liable for a failure to do so. Other cases purporting to find a waiver of discretionary function immunity in the SAA have similarly relied on facts wherein the Government did not exercise its discretionary powers. *See Kelly v. United States*, 531 F.2d 1144 (2d Cir.1976) (considering whether negligent Coast Guard rescue operations are covered by the SAA); *Nelson v. United States*, 639 F.2d 469 (9th Cir.1980) (death of government subcontractor allegedly caused by failure of government supervisor to halt marine repair work in foul weather); *cf. Offshore Transportation Corp. v. United States*, 465 F.Supp. 976 (E.D.La.1979) (finding waiver of immunity for discretionary functions, but reviewing Coast Guard decision not to mark sunken vessel only for the existence of a rational basis).

Only the Fourth Circuit provides an exception to this pattern. In *Lane v. United States*, 529 F.2d 175 (4th Cir.1975), the court of appeals considered whether the United States, in the guise of the Army Corps of Engineers and the U.S. Coast Guard, was negligent in failing to mark or remove a sunken barge from the Intracoastal Waterway. Plaintiff's cabin cruiser had struck the barge while water-skiing and

---

**1.** The court in *De Bardeleben* was also afraid that incorporation of FTCA exemptions might conflict with that line of cases holding the Government liable for injuries caused by the "discretionary" operation of warships on the high seas. 451 F.2d at 146. The conduct of a man-of-war does not, however, normally invoke the protection given to discretionary functions. *See Gercey v. United States*, 540 F.2d 536, 539 (1st Cir.1976).

sank. *Id.* at 177. Finding, "no basis upon which we can import the many exceptions in the Tort Claims Act into the Suits in Admiralty Act," the Fourth Circuit held that the SAA included an "effective waiver of sovereign immunity." *Id.* at 179 (citing *De Bardeleben*). The court went on to hold that, because those Government agencies involved knew of the wreck and the danger it posed to traffic in the ICW, the Government had abused its discretion by failing to mark the obstruction for the benefit of other vessels. *Id.* at 178–79.

■ This Court finds a more than ample basis for incorporating the discretionary function exemption of the FTCA into the Suits in Admiralty Act. As explained by the District of Columbia Circuit Court of Appeals in *Canadian Transport Co. v. United States:*

> ... the legislative history of the FTCA suggests that the exemption for discretionary functions in that Act was derived from the doctrine of separation of powers, a doctrine to which the courts must adhere even in the absence of an explicit statutory command.

663 F.2d at 1086, citing *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). Thus, even if the discretionary function exemption had not been expressly included in the FTCA, sound principles of judicial restraint in the face of governmental administrative activity dictate that cases involving discretionary functions be removed from the jurisdiction of the courts. *Canadian Transport Co., supra* at 1086; *see generally* 4 K. Davis, Administrative Law Treatise § 25.13 (2d Ed.1983).

Those principles are equally relevant to suits brought under color of the SAA. Decisions by those branches of Government entrusted with the regulation of the Nation's navigable waterways may involve questions of public policy, economic expedi-ency and administrative practicability which are correctly the province of agency discretion. *Estate of Callas v. United States,* 682 F.2d 613, 619–20 (7th Cir.1982); *Gercey, supra* at 539. The Court must conclude that the Suits in Admiralty Act does not constitute a waiver of the Government's immunity to suits based on the exercise of its discretionary authority. *Canadian Transport Co., supra* at 1086; *Callas, supra* at 619; *Gercey, supra* at 539; *Gemp v. United States,* 684 F.2d 404, 408 (6th Cir.1982).

Such a construction of the SAA not only comports with established axioms of strict construction of statutory waivers of immunity, *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980); *Fidelity Construction Co. v. United States,* 700 F.2d 1379, 1383–84 (CA Fed. 1983), but also more accurately reflects the intent of Congress when it amended the SAA in 1960. *See* S.Rep. No. 1894 at 1. Where Congress has found judicial intrusion into executive and legislative authority advisable, it has enacted legislation allowing for the appropriate review of such actions, such as in the Administrative Procedure Act ("APA"). 5 U.S.C. § 701 *et seq.* (1976).[2] The Court finds similar review beyond its jurisdiction under the Suits in Admiralty Act.

**(B) Discretion of the U.S.C.G. and the Corps**

■ The next question facing the Court is whether, under the facts of the case at bar, the Coast Guard and the Army Corps of Engineers engaged in functions of discretion when they failed to mark or remove the dolphin from the Wilmington River.

"The creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is prohibited." 33 U.S.C. § 403. The owners of sunken vessels which pose an obstruction to navigation are

---

**2.** Notice where the APA, as well as other statutes providing judicial review of discretionary functions, does not provide private parties with a cause of action for damages. *Carson v. Alvord,* 487 F.Supp. 1049, 1052–53 (N.D.Ga.1980) (APA providing no private cause of action); *Jayvee Brand, Inc. v. United States,* 721 F.2d 385 (D.C. Cir.1983) (FTCA provides no cause of action for abuse of discretionary rulemaking by Consumer Product Safety Commission).

required by law to "immediately mark it with a buoy or beacon ... and to maintain such marks until the sunken craft is removed or abandoned." *Id.* at § 409.[3] Although the ostensible impact of these requirements is upon private parties, these duties of ownership have been equally applied to the United States. *Eastern Transportation Co. v. United States,* 272 U.S. 675, 692–93, 47 S.Ct. 289, 293–294, 71 L.Ed. 472 (1927); *Chute v. United States,* 610 F.2d 7, 10 (1st Cir.1979).

Whether or not the Government owns or creates the obstruction to navigation, it maintains the authority to remove such obstructions inhabiting the waters for more than 30 days. 33 U.S.C. § 414. In actions involving private vessels and other obstructions, the term "obstruction" has been broadly construed, *see United States v. Republic Steel Corp.,* 362 U.S. 482, 80 S.Ct. 884, 4 L.Ed.2d 903 (1960) (particulate matter released as industrial waste held an obstruction); *United States v. Raven,* 500 F.2d 728 (5th Cir.1974) (inadvertently grounded schooner held an obstruction); *Orange Beach Water, Sewer and Fire Protection Authority v. M/V Alva,* 680 F.2d 1374 (11th Cir.1982) (moored towboat and barges an obstruction), and so the United States' authority to keep clear the navigable waters under § 414 may permit the removal of almost any obstruction to navigation as well.

▪ Plaintiffs argue that the remaining dolphin near the Memorial Bridge constitutes such an obstruction and that the Government—either by virtue of its owning the dolphin, under §§ 403 and 409, or as the manager of the ICW, under § 414—was bound to mark and/or remove the dolphin from the channel. Such a construction of the law overlooks the essential character of the dolphin—the Army Corps of Engineers originally placed the dolphin in the channel to assist the navigation of the river. The dolphin was paid for by an express congressional appropriation to the Corps to create such aids.

In *Chute v. United States, supra,* the Court of Appeals for the First Circuit found that the deliberate placement of a vessel or other object in navigable waters by the federal government, for a proper governmental purpose, rendered inapplicable the provisions of the Rivers and Harbors Act. *Id.* at 10–11. The issue in *Chute* was whether the remains of a vessel scuttled by the U.S. Navy for target practice was an "obstruction" under the Act. Despite the fact that the vessel held no present value to the Government, the First Circuit refused to consider it a "wreck" within the meaning of § 409.

> The absolute prohibition in § 409 against the sinking of a vessel in a navigable channel is obviously not intended to derogate from the federal government's power to place structures in otherwise navigable channels pursuant to its lawful authority. By the same token, the § 409 requirement that a wreck be promptly removed is obviously not applicable to an obstruction which the government placed there for a valid governmental purpose.

*Id.* at 11.

By comparison, the dolphin which the decedent Trosdal struck maintains substantial viability in its present location as a mooring point for boats and barges on the Wilmington River. Even if its utility has waned in recent years, as alleged by plaintiffs, its construction pursuant to a valid governmental purpose places it beyond the proscriptions of the Rivers and Harbors Act. *Chute, supra* at 11; *Magno v. Corros,* 630 F.2d 224, 227–28 (4th Cir.1980).

Were the dolphin an obstruction covered by the Rivers and Harbors Act, it would still remain within the sound discretion of the Government whether or not to remove the obstruction. *Buffalo Bayou Transportation Co. v. United States,* 375 F.2d 675, 677 (5th Cir.1967); *Offshore Transportation Corp. v. United States, supra* at

---

**3.** Other obtructions included in the Act are bridges and dikes, 33 U.S.C. § 401, and refuse,

*id.* at § 407.

979; *Whitmire v. United States,* 493 F.Supp. 891, 893 (S.D.Fla.1980). The failure of the Government here to take any action regarding the dolphin results from a decision (or lack thereof) entirely within the discretion of the Corps and is, therefore, unreviewable by this Court under the SAA.

This is not to say that the discretion of the Corps is without any practical limitations. For example, had the Corps made a decision to remove the dolphin, it would have had to go about the work in a careful and diligent manner. *See Indian Towing Co. v. United States,* 350 U.S. 61, 68–69, 76 S.Ct. 122, 126–127, 100 L.Ed. 48 (1955). But where the Government has failed to make any policy choice or decision to act, there can be no duty to act with due care. *Chute, supra* at 13; *Magno v. Corros, supra* at 228; *Gercey, supra* at 538.[4]

Plaintiffs respond by attempting to portray the Corps' earlier decisions to remove other dolphins as an affirmative exercise of discretion toward the single dolphin in issue. Thus, the plaintiffs view the Corps' failure to remove the dolphin as the negligent implementation of the "policy" of clearing the Wilmington River of old dolphins. The Court fails to see how such an inference might be drawn. The decision to remove other dolphins may affect the relative importance or use of that remaining dolphin, but that result does not render those decisions a positive discretionary action taken with regard to that dolphin. The Corps has in fact failed to assert any policy with regard to that remaining dolphin, and plaintiffs may not bring an action based on that failure. *Magno v. Corros, supra* at 228; *Estate of Callas, supra* at 621.

### (C) The Coast Guard's Duty to Mark

■ The duty of the Coast Guard to mark objects in navigable waters is also a discretionary one. 14 U.S.C. § 86 provides, in pertinent part:

> ... the Secretary may mark for the protection of navigation any sunken vessel or other obstruction existing in navigable waters ... in such a manner and for so long as, in his judgment, the needs of maritime navigation require.

Read in harmony with the other clauses of the Act, § 86 grants to the U.S.C.G. broad discretion to determine whether or not to mark obstructions in navigable waters. *Chute, supra* at 13; *Bearce, supra* at 560; *Magno v. Corros, supra* at 228–29. In addition, the court in *Magno v. Corros* extended the logic of *Chute* to § 86 and found that structures intentionally placed in navigable waters for a legitimate governmental purpose were not subject to that section. 630 F.2d at 227–28.

The dolphin *sub judice* is clearly not an obstruction as contemplated for marking by § 86. *See* discussion, *supra* at 853–854. Moreover, even if it was an obstruction eligible for marking by the Coast Guard, the Court can find no mandatory duty on the part of the Coast Guard to do so. Plaintiffs, therefore, have failed to state any colorable claim for relief as to the actions of the Coast Guard. *See also* n. 3, *supra* at 852.

### (D) Federal Tort Claims Act Remedies

Perhaps fearing that the Suits in Admiralty Act would not provide the Court with proper jurisdiction to hear their claims, the plaintiffs have offered an eleventh-hour amendment to the Consolidated Pre-trial Order in this case. In that amendment, plaintiffs offer as an alternative source of jurisdiction the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–80. Unfortunately,

---

**4.** Again, the approach adopted by the Fourth Circuit in *Lane,* 529 F.2d 175, would have the Court review the failure of the Corps to remove the dolphin here for possible "abuse of discretion." Under that line of reasoning, the Fourth Circuit would hold the Corps liable if it failed to remove the dolphin while having knowledge that the dolphin posed a grave danger to navigation, or had in fact caused accidents in the past. *See Doyle v. United States,* 441 F.Supp. 701 (D.S. C.1977). Even if this Court had not rejected the analysis of *Lane,* the plaintiffs here admit that there is no evidence of any previous allisions with the dolphin, nor complaints by other mariners about the presence of the dolphin in the channel. Thus, even under the standard in *Lane,* the Court could not find fault with the actions of the Corps.

the plaintiffs are mistaken in their request for an FTCA remedy for two reasons.

 First, as set out in the decision of *McCormick v. United States*, 680 F.2d 345 (5th Cir.1982), the Suits in Admiralty Act is the loan source of jurisdiction for admiralty claims brought against the United States. *McCormick* involved facts uncannily similar to those now confronting this Court—appellants were traversing the Choctawhatchee Bay in Florida in a small pleasure boat when the boat struck a piling and sank. *Id.* at 346. The piling was apparently constructed by the United States Army and was unmarked at the time of the collision.

The court noted that, after its amendment in 1960, the SAA was intended by Congress to encompass all maritime tort claims raised against the United States where the plaintiff would have a cause of action against a private party. *Id.* at 349. Since the appellants clearly had brought an action based on a maritime tort, the Fifth Circuit concluded that appellants had to proceed under the SAA. *Id.* The court of appeals then remanded the case to the district court for further determinations of fact.

Under the holding in *McCormick*, the plaintiffs now before the Court must proceed, if at all, under the SAA. However, there is an additional reason why the FTCA offers plaintiffs no safe harbor in this case. From the foregoing discussion concerning the actions of the Corps and the U.S.C.G., it is obvious that those agencies were acting pursuant to their discretionary authority under their respective enabling statutes. The Court was consequently barred from reviewing those actions under the SAA by sound principles of separation of powers. Those same principles would also prevent the Court from reviewing Government action under the FTCA. *See Canadian Transport Co., supra* at 1086; *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). Of course, the express provisions of the FTCA bar the Court from consideration of claims as made by plaintiffs in any case. 28 U.S.C. § 2680(a).

## III. CONCLUSION

Based on the foregoing discussion, the Court must determine that it lacks jurisdiction over the claims raised by the plaintiffs in this case, under both the Suits in Admiralty Act and the Federal Tort Claims Act.