## Marshall BEARCE, Administrator of the Estate of Thomas Bearce, Deceased; Aetna Insurance Company and Leslie Palmer, Jr., Plaintiffs-Appellants,

v.

## UNITED STATES of America and its Subordinate Agencies, The United States Coast Guard and The United States Corps of Engineers, Defendants-Appellees.

### No. 79–1512.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 23, 1979.

Decided Jan. 4, 1980.

Rehearing and Rehearing In Banc Denied March 20, 1980.

Robert S. Minetz, Chicago, Ill., for plaintiffs-appellants.

Patricia G. Reeves, Appellate Staff, Civil Div., Dept. of Justice, Washington, D. C., for defendants-appellees.

Before FAIRCHILD, Chief Judge, BAUER, Circuit Judge, and VAN DUSEN, Senior Circuit Judge.*

VAN DUSEN, Senior Circuit Judge.

This appeal attacks an April 4, 1979, district court judgment in favor of the defendant (the United States), on plaintiffs' claim alleging violation of the Suits in Admiralty Act, 46 U.S.C. § 742, et seq. We affirm the district court's judgment on the ground that the alleged wrongful acts of the Government are not reviewable by a court because these acts are included under an implied "discretionary function" exception to the Federal Government's waiver of sovereign immunity under the Suits in Admiralty Act.[1]

On the night of May 10, 1975, Thomas Bearce was operating a new, 20-foot, fiberglass speedboat with a 233 h. p. engine in the Chicago harbor on Lake Michigan. The harbor is made out of a series of breakwaters. It has an exterior breakwater which runs roughly parallel to the shore. Ninety-seven feet from the north end of the exterior breakwater there is a four-second flashing green light maintained by the Coast Guard as an aid to navigation. Extending out perpendicular to the shore is another breakwater, the Shore Arm Extension breakwater. Both breakwaters were constructed before 1920; however, a parapet was added to the Shore Arm Extension in 1965, which made this breakwater extend 3.5 feet above the water. The eastern end

---

* The Honorable Francis L. Van Dusen, Senior Circuit Judge of the United States Court of Appeals for the Third Circuit, sitting by designation.

1. We do not agree with the district court opinion's statement that "the sole proximate cause of the accident that brought about the death of Thomas Bearce on May 10, 1975, at approximately 9:55 p. m., Central Standard Time, was his negligent operation of the motor boat he was piloting . . . ." We believe the presence of a light on the Shore Arm Extension might have prevented the accident, and hence the failure to provide such light might have been a cause of the accident.

of the Shore Arm Extension is 400 feet from the northern end of the exterior breakwater. There has never been a light on the Shore Arm Extension, so the 400-foot gap between the two breakwaters has only one light to assist passage at night. This opening is a secondary entrance to the Chicago harbor and is rarely used by commercial vessels. The main entrance has two lights and other navigational aids.

Bearce was an experienced power boat operator who was familiar with the Chicago harbor. He had passed through the gap earlier that day. The district court found that at approximately 10:00 p. m. on the night of May 10, 1975, he was following another boat out of the harbor through the gap, traveling at approximately 30–35 miles per hour. Just before he cleared the breakwater, he swerved to the left and collided with the Shore Arm Extension 20 feet from its eastern end. Presumably Bearce believed he had cleared the breakwater when he changed course. Bearce was instantly killed in the accident and the only passenger in the boat was seriously injured. This action was originally brought by Bearce's survivors, asserting that the Government was negligent in failing to place a light on the eastern end of the Shore Arm Extension, and asserting recovery under the Suits in Admiralty Act and the Federal Tort Claims Act.

At trial, evidence was presented that the Illinois Boating Council had held public hearings attended by the Coast Guard in 1966 concerning the navigational aids needed in the gap. The Coast Guard's report after the hearing noted that the color of the light on the exterior breakwater should be changed from white to green and that a red

flashing light should be placed on the end of the Shore Arm Extension. The Coast Guard never acted on the second recommendation, but did change the color of the existing light so that it would be distinguishable from the lights of the city. On the night of May 10, this light was working properly.

The district court entered a judgment for the United States based, *inter alia,* upon a holding that the Federal Government had not waived its sovereign immunity under the Suits in Admiralty Act in matters involving discretionary functions.[2] The court did not rule on the Federal Tort Claims Act claim. We affirm.

### I.

The plaintiffs' actions properly arise under the Suits in Admiralty Act, 46 U.S.C. § 742, *et seq.*[3] *United States v. Continental Tuna Corp.,* 425 U.S. 164, 176 n. 14, 96 S.Ct. 1319, 47 L.Ed.2d 653 (1976); *Chapman v. United States,* 575 F.2d 147 (7th Cir.), *cert. denied,* 439 U.S. 893, 99 S.Ct. 251, 58 L.Ed.2d 239 (1978). The Suits in Admiralty Act (SIAA) was originally enacted in 1920 as a waiver of sovereign immunity in cases arising out of claims involving United States vessels and cargo. In 1960 the statute was amended to eliminate a variety of jurisdictional problems by bringing all maritime claims against the United States under the admiralty jurisdiction of the federal courts. *United States v. United Continental Tuna Corp., supra* 425 U.S. at 172–78, 96 S.Ct. 1319. One of the results of the 1960 amendments was to remove maritime claims such as the ones at bar from the coverage of the Federal Tort Claims Act (FTCA).[4] However, when the SIAA was

---

**2.** The district court held that:

"The United States owed no duty to plaintiffs or to the public in general to establish an aid to navigation at any particular place or to establish a particular type of aid at any given location. The establishment and placement of aids to navigation is a discretionary function vested in the United States Coast Guard by Congress. 14 U.S.C. § 81; *Gercey v. United States,* 540 F.2d 536 (1st Cir. 1976), *cert. denied,* 430 U.S. 954, 97 S.Ct. 1599, 51 L.Ed.2d 804 (1977)."

**3.** 46 U.S.C. § 742 states in pertinent part:

"In cases where . . . if a private person or property were involved, a proceeding in admiralty could be maintained, any appropriate nonjury proceeding in personam may be brought against the United States."

**4.** The FTCA has an exemption for all cases covered by the SIAA, 28 U.S.C. § 2680(d).

amended, the exceptions to the FTCA's waiver of sovereign immunity set out in 28 U.S.C. § 2680 were not restated in the SIAA. Thus, if the exceptions expressed in 28 U.S.C. § 2680 are not implied in suits under the SIAA, the 1960 amendments to the SIAA will have served not only to eliminate jurisdictional difficulties but also to extend the waiver of sovereign immunity in the area of maritime law. This court must determine whether the 1960 amendments to the SIAA were intended to eliminate the discretionary function exception to the waiver of sovereign immunity expressed in the FTCA or whether this exception should be implied into the SIAA.

The discretionary function exception is one of the exceptions provided in the FTCA, 28 U.S.C. § 2680(a).[5] The question of whether the discretionary function exception should be implied in the SIAA has been litigated in several circuits, producing a conflict between the First Circuit and the Fourth and Fifth Circuits. The Fourth and Fifth Circuits have refused to imply the discretionary function exception, arguing that Congress should cure the statute if the waiver of sovereign immunity is too extensive. *Lane v. United States,* 529 F.2d 175, 179 (4th Cir. 1975);[6] *De Bardeleben Marine Corp. v. United States,* 451 F.2d 140, 146 & n. 15 (5th Cir. 1971) (dictum). The First Circuit has adopted the opposite position and has implied a discretionary function exception in the SIAA, *Gercey v. United States,* 540 F.2d 536, 539 (1st Cir. 1976), cert. denied, 430 U.S. 954, 97 S.Ct. 1599, 51 L.Ed.2d 804 (1977). On this record, we agree with the reasoning of the First Circuit in the *Gercey* case.

In *Gercey, supra* at 539, the First Circuit persuasively explained its position as follows:

"Unlike the Federal Tort Claims Act, see 28 U.S.C. § 2680(a), the Suits in Admiralty Act does not contain an express exception for harm caused by the exercise of 'discretionary functions,' a category which includes, and probably should be limited to, basic 'policy judgments as to the public interest.' *See Griffin v. United States,* 500 F.2d 1059, 1064 (3d Cir. 1974); K. Davis, Administrative Law Treatise § 25.08 (1976 Supp.). Although the Suits in Admiralty Act contains no express exception, we think that sound principles demand that the act be construed as subject to such discretionary function exception. *See* K. Davis, *supra,* § 25.13 (1958 ed. § 1970 Supp.); L. Jaffe, Judicial Control of Administrative Action, 244 n. 43 (1965). *Compare King v. Seattle,* 84 Wash.2d 239, 525 P.2d 228 (1974). Were there no such immunity for basic policy making decisions, all administrative and legislative decisions concerning the public interest in maritime matters would be subject to independent judicial review in the not unlikely event that the implementation of those policy judgments were to cause private injuries. That, in our view, would be an intolerable state of affairs, *see United States v. Sandra & Dennis Fishing Co.,* 372 F.2d 189, 195 (1st Cir. 1967), and we decline, in the absence of an express Congressional directive to the contrary, to construe this waiver of sovereign immunity as providing the federal courts with that power." (Footnote omitted.)

■ The First Circuit's conclusion is further buttressed by the Supreme Court's opinion in *United States v. United Continental Tuna Corp.,* 425 U.S. 164, 176, 96 S.Ct. 1319, 47 L.Ed.2d 653 (1976), where the Court noted that the 1960 amendments to

---

5. "§ 2680. Exceptions

"The provisions of this chapter and section 1346(b) of this title shall not apply to—
"(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government whether or not the discretion involved be abused."

6. The *Lane* case involved damage caused by a barge previously sunk and unmarked of which the United States officials were aware. Other acts of Congress, such as the Wreck Acts, 14 U.S.C. § 86, 33 U.S.C. §§ 409, 414, which are not relevant here, were pertinent in that case.

the SIAA were intended to eliminate jurisdictional problems. The Court held that, in light of this limited congressional purpose, it was improper to interpret the 1960 amendments to the SIAA literally so as to effectively repeal the exceptions to the waiver of sovereign immunity included in the Public Vessels Act, 46 U.S.C. § 781, *et seq.* In light of these authorities, we hold that, on the record in this case, a discretionary function exception is implied in the Suits in Admiralty Act.

## II.

■ The only matter remaining for this court to decide is whether the action of the Government in failing to erect a light at the eastern end of the Shore Arm Extension falls within the discretionary function exception. We have concluded that it does. The Coast Guard has been given discretionary authority to establish aids to navigation.[7] Title 14 U.S.C. § 81 states in pertinent part:

"In order to aid navigation and to prevent disasters, collisions, and wrecks of vessels and aircraft, the Coast Guard *may* establish, maintain and operate:

"(1) aids to maritime navigation required to serve the needs of the armed forces or of the commerce of the United States, . . ." (Emphasis supplied.)

In this case, the acts which plaintiffs assert constitute negligence resulted from an exercise of this statutory discretion. The leading case in determining the limits of the discretionary function exception's application to the Coast Guard's management of aids to navigation is *Indian Towing Co. v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955), where the Government's failure to maintain the beacon in a lighthouse in proper working order was held to be unprotected by the discretionary function exception. At page 69, 76 S.Ct. at page 126, the Court stated that:

"*The Coast Guard need not undertake the lighthouse service.* But once it exercised its discretion to operate a light on Chandeleur Island and engendered reliance on the guidance afforded by the light, it was obligated to use due care to make certain that the light was kept in good working order; and, if the light did become extinguished, then the Coast Guard was further obligated to use due care to discover this fact and to repair the light or give warning that it was not functioning. If the Coast Guard failed in its duty and damage was thereby caused to petitioners, the United States is liable under the Tort Claims Act." (Emphasis added.)

Similarly, in *Somerset Seafood Co. v. United States,* 193 F.2d 631, 635 (4th Cir. 1951), where the Government had placed a buoy over 500 feet from its proper location, the court stated that:

"[E]ven if the decision to mark or remove the wreck be regarded as discretionary, there is liability for negligence in marking after the discretion has been exercised and the decision to mark has been made. There is certainly no discretion to mark a wreck in such way as to constitute a trap for the ignorant or unwary rather than a warning of danger."

In both cases the Government was liable for operational errors in the performance of routine duties: negligent maintenance of a lighthouse and negligent placement of a buoy. The courts emphasized that the injuries resulted from the breach of the non-discretionary duty to operate the aids with due care. However, the decision to establish the aid in the first instance was discretionary.

In our case the Coast Guard's aid to navigation in the gap was operating as planned. There was no operational error. Plaintiffs complain of the total absence of any mark

7. Plaintiffs assert that the Corps of Engineers is also liable for the failure to place a light on the eastern end of the Shore Arm Extension either when the breakwater was originally built or when the parapet was added in 1965. Establishing navigational aids in the Chicago harbor has been the responsibility of the Coast Guard (finding 31). In light of the Coast Guard's assumption of this responsibility in the Chicago harbor, the Corps' decision to defer to the Coast Guard in the matter of erecting navigational aids, rather than duplicating the Coast Guard's efforts, is not reviewable under the discretionary function exception to the SIAA.

on the Shore Arm Extension. They attempt to characterize the Coast Guard's decision to have one light at the gap as an operational error. This is unpersuasive. The decision not to build another light was made at an administrative level. The need for aids to navigation in the gap had been studied in 1966 and a report was prepared by the Coast Guard. Not all of the recommendations of the report were adopted. However, the color of the existing flashing light was changed to make it more distinct.[8]

■ There was evidence that the Coast Guard has similarly decided to provide only a single light for secondary entrances to the Milwaukee and Buffalo harbors. The evidence further showed that at the time of trial the Coast Guard had a priority list of aids to navigation approved for construction totaling 300 million dollars which had not yet been funded by Congress. In view of budgetary restraints, the Coast Guard cannot implement every recommendation its regional offices may make. The allocation of funds for the construction of new aids to navigation requires policy judgments con-

cerning the public interest, and thus is a discretionary function which courts should not review in the context of a tort claim.[9]

The district court's order will be affirmed.

---

8. The green color of the light also indicated to any boat operator leaving the harbor that the light should be on his right as he left the harbor under the well recognized maxim "red right returning." See 2 Marine Law § 1317.

9. In *Gercey v. United States,* 540 F.2d 536, 538–39, the court noted the following factors in determining the extent of the discretionary function exception:

"[W]e note at the outset that the Coast Guard's alleged negligence lies in failing to adopt a policy of taking positive steps to protect the public from vessels whose certificates have been revoked, not in imperfectly executing a federal program established either by an act of Congress or a federal regulation. *Compare Indian Towing Co. v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955), *and Coastwise Packet Co. v. United States,* 398 F.2d 77 (1st Cir. 1968). Neither the Congress nor the Coast Guard has explicitly required that positive action be taken to protect the public from such vessels. . . . Although we agree with plaintiffs that the Coast Guard has the discretionary authority to adopt such a follow-up program, it has not done so.

"The decision whether to institute such a policy, in our view, involves a basic policy judgment as to how the public interest may best be promoted. The Coast Guard has limited resources and a myriad of regulatory

responsibilities. A determination whether it would be in the public interest to make a major commitment of the Coast Guard's resources to the creation of a follow-up system would require consideration of a host of factors: how effective the present enforcement measures—whatever they are—have been; how much more protection would be afforded the fee paying public if such a system were created; and, finally, whether the increased protection would be sufficient to warrant both the commitment of the Coast Guard's resources and the possible diversion of such resources from other regulatory activities.

"We need not attempt to strike the balance between these perhaps competing interests. The critical question for our consideration is not whether we agree with the plaintiffs' contention that ordinary prudence requires that the Coast Guard take broad, positive measures to protect the fee paying public from decertified vessels. Rather, it is whether a federal court has the power to impose liability on the Coast Guard for failing to make, and implement, the basic policy decision that the public interest requires its limited resources be committed to such a program. We conclude that we have not been conferred that power by the Suits in Admiralty Act."