AMERICAN GLOBAL LINES, INC., Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 83 Civ. 7012 (JMC).

United States District Court, S.D. New York.

Oct. 10, 1986.

---

Kenneth Geller, Hill, Betts & Nash, New York City, for plaintiff.

Janis G. Schulmeisters, Atty. in Charge, Torts Branch, Civil Div., U.S. Dept. of Justice, for defendant.

CANNELLA, District Judge.

Defendant's motion to dismiss the complaint for lack of subject matter jurisdiction is granted. Fed.R.Civ.P. 12(b)(1).

## BACKGROUND

On September 24, 1981, James Kleinschmidt, a vessel pilot duly licensed by the United States Coast Guard, was in control of the steamship SS Oceanic Independence ["Independence"]. While approaching Nawiliwili Bay in the Hawaiian Islands, the Independence ran aground and sustained serious structural damage.

On September 22, 1983, American Global Lines, Inc. ["Global Lines"], owner and operator of the Independence, submitted a claim to the Coast Guard in Honolulu in the amount of $5,500,554.80. On September 23, Global Lines commenced this action, claiming that its loss was due to negligence on the part of the Coast Guard in granting Kleinschmidt a pilot's endorsement for Nawiliwili Bay. Following some discovery, the United States moved to dismiss the complaint on the ground that the Court lacks subject matter jurisdiction over the claim.

## DISCUSSION

### I. Subject Matter Jurisdiction

Global Lines' complaint alleges that jurisdiction rests upon the Suits in Admiralty Act, 46 U.S.C. §§ 741–752 ["SIAA"]. Alternatively, the complaint alleges jurisdiction under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680 ["FTCA"]. The two Acts are mutually exclusive for jurisdictional purposes. Section 745 of the SIAA states that "where a remedy is provided by this chapter it shall hereafter be exclusive of any other action [against the United States] by reason of the same subject matter." Section 2680(d) of the FTCA states that it "shall not apply to ... [a]ny claim for which a remedy is provided by sections 741–752, 781–790 of Title 46, relating to claims or suits in admiralty against the United States." Therefore, there can be jurisdiction under only one Act.

For a tort claim to be considered maritime in nature, two requirements must be satisfied. First, the "wrong and injury complained of must have been committed wholly upon the high seas or navigable waters." *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 253, 93 S.Ct. 493, 497, 34 L.Ed.2d 454 (1972) (quoting *The Plymouth*, 3 Wall. 20, 35, 18

L.Ed.125 (1866)); *see also Victory Carriers, Inc. v. Law,* 404 U.S. 202, 205, 92 S.Ct. 418, 421, 30 L.Ed.2d 383 (1971) ("The maritime tort jurisdiction of the federal courts is determined by the locality of the accident.") Second, the wrong must "bear a significant relationship to traditional maritime activity." *Executive Jet Aviation,* 409 U.S. at 268, 93 S.Ct. at 504; *Foremost Insurance Co. v. Richardson,* 457 U.S. 668, 673–74, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982).

■ Global Lines claims that the Coast Guard was negligent in failing to follow its own examination procedures "when it tested and issued Kleinschmidt a pilot's endorsement for Nawiliwili Bay." Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss at 3, 83 Civ. 7012 (JMC) (filed S.D.N.Y. Sept. 26, 1985) ["Plaintiff's Opposition"]. That the claimed negligence may have occurred on land does not preclude admiralty jurisdiction. *See Kelly v. United States,* 531 F.2d 1144, 1146 (2d Cir.1976); *Sawczyk v. United States,* 499 F.Supp. 1034, 1038 (W.D.N.Y.1980). Claims in admiralty, however, must "implicate traditional concepts of maritime law such as seaworthiness, cargo damage, salvage, or the like." *Keene Corp. v. United States,* 700 F.2d 836, 844 (2d Cir.1983).

■ There is no real dispute that Global Lines' claim is maritime in nature. Although the alleged negligence occurred on land, it manifested itself on navigable waters. In addition, the operation of the Independence clearly bears a relation to traditional maritime activity. Thus, Global Lines' exclusive remedy lies with the SIAA. *See* 46 U.S.C. § 745; *Ashland v. Ling-Temco-Vought, Inc.,* 711 F.2d 1431, 1435–36 (9th Cir.1983).

## II. *SIAA's Implied Discretionary Function Exception*

Because Global Lines' exclusive remedy lies with the SIAA and the United States has moved to dismiss on the ground that the Coast Guard's actions constitute a discretionary function, the Court must decide whether a discretionary function exception may be implied in the SIAA. Although the Second Circuit has not decided the issue, four other circuits have considered it.

The SIAA was first enacted in 1920 and subsequently amended in 1960 to eliminate jurisdictional problems that had arisen when maritime claims against the United States were brought in various courts. The purpose of the amendment was to insure that all such claims fall under the admiralty jurisdiction of the federal courts. *See United States v. United Continental Tuna Corp.,* 425 U.S. 164, 172–78, 96 S.Ct. 1319, 1324–27, 47 L.Ed.2d 653 (1976). One of the results of the 1960 amendment was the removal of maritime claims from coverage of the FTCA. However, the discretionary function exception to the FTCA's waiver of sovereign immunity was not restated in the SIAA.

The Fourth and Fifth Circuits have refused to imply a discretionary function exception into the SIAA in the absence of legislative language or declared congressional intent. *See Lane v. United States,* 529 F.2d 175, 179 (4th Cir.1975); *De Bardeleben Marine Corp. v. United States,* 451 F.2d 140, 146 & n. 15 (5th Cir.1971) (dictum).[1] In more recent cases, the First, Sixth, Seventh and District of Columbia Circuits have chosen to imply the exception into the SIAA. *See Gercy v. United States,* 540 F.2d 536, 539 (1st Cir.), *cert. denied,* 430 U.S. 954, 97 S.Ct. 1599, 51 L.Ed.2d 804 (1976); *Gemp v. United States,* 684 F.2d 404, 408 (6th Cir.1982); *Bearce v. United States,* 614 F.2d 556, 558–59 (7th Cir.), *cert. denied,* 449 U.S.

1. During the time in which this motion was being considered by the Court, the Fifth Circuit specifically abandoned *DeBardeleben Marine Corp.* and "join[ed] the virtually unanimous holdings and reasonings of the other federal Courts of Appeals ... [and] recognize[d] that a discretionary functions limitation is implicit in private suits brought against the United States. Government under the Suits in Admiralty Act." *Wiggins v. United States,* 799 F.2d 962, 966 (5th Cir.1986); *see also Brown v. United States,* 790 F.2d 199, 203–04 (1st Cir.1986).

837, 101 S.Ct. 112, 66 L.Ed.2d 44 (1980); *Canadian Transport Co. v. United States,* 663 F.2d 1081, 1085 (D.C.Cir.1980); *see also Eazor Express, Inc. v. United States,* 611 F.Supp. 197, 202 (E.D.N.Y.1985); *In re Ohio River Disaster Litigation,* 579 F.Supp. 1273, 1278–79 (S.D.Ohio 1984).

In *Gercy,* 540 F.2d 536, plaintiffs filed a wrongful death action for the loss of their son, who was drowned when a vessel that had been decertified by the Coast Guard sank. They claimed that the Coast Guard had been negligent in failing to establish a comprehensive program to protect the public from vessels that had been decertified. Although the owners of such vessels were subject to fines, the vessels could still be operated legally. The First Circuit held:

> Although the Suits in Admiralty Act contains no express exception, we think that sound principles demand that the act be construed as subject to such discretionary function exception.... Were there no immunity for basic policy making decisions, all administrative and legislative decisions concerning the public interest in maritime matters would be subject to independent judicial review in the not unlikely event that the implementation of those policy judgments were to cause private injuries. That, in our view, would be an intolerable state of affairs, ... and we decline, in the absence of an express Congressional directive to the contrary, to construe this waiver of sovereign immunity as providing the federal courts with that power.

*Id.* at 539.

*Canadian Transport Co.,* 663 F.2d 1081, involved a challenge to the Coast Guard's refusal to permit a vessel manned with Polish masters and officers to enter the port of Norfolk, Virginia on grounds of national security. The District of Columbia Circuit held that the discretionary function exception was implied in the SIAA, and stated that "respect for the doctrine of separation of powers requires that in cases arising under the Suits in Admiralty Act, courts should refrain from passing judgment on the appropriateness of actions of the executive branch *which meet the requirements of the discretionary function exception of the FTCA."* *Id.* at 1085 (emphasis added).

■ The Court finds this line of reasoning persuasive. It is unreasonable to assume that in amending the SIAA in 1960 for the purpose of consolidating maritime claims against the United States within the admiralty jurisdiction of the federal courts Congress intended to waive sovereign immunity in all such cases solely on the basis that they were maritime in nature. Instead, it is far more logical to infer that an activity which can be characterized as discretionary should be excepted from the SIAA's general waiver of sovereign immunity in the same fashion as are discretionary functions under the FTCA.

## III. *Discretionary Function Under the SIAA*

Having determined that a discretionary function exception to the SIAA can be implied, the Court must consider whether the Coast Guard's actions constitute the type of discretionary function that would foreclose judicial scrutiny. Although Global Lines concedes that the promulgation of regulations regarding pilot certification is a discretionary function, *see* Plaintiff's Opposition at 3–4, it argues that the Coast Guard failed to follow its own regulations in issuing Kleinschmidt a pilot's endorsement for Nawiliwili Bay, and that the United States has waived its sovereign immunity for such negligence. *Id.* at 4.

Global Lines' somewhat curious argument may be summarized as follows. Kleinschmidt was issued a master's license by the Coast Guard in 1949. To obtain an initial pilot's endorsement for a particular route, Coast Guard regulations require an applicant to be tested in seven specific areas. *See* 46 C.F.R. 10.05–43(a). However, subsection (b) provides that an applicant for an "extension of route" need be examined only in (1) rules of the road; (2) inland rules applicable to the route; (3) chart sketch of the route with detail, and in any other area the officer in charge deems nec-

essary. Because Kleinschmidt's application for a pilot's endorsement for Nawiliwili Bay was not an initial one, he was deemed to be seeking an extension of route, and consequently was tested only insofar as required by section 10.05–43(b). It should be noted that an extension of route endorsement apparently relates to any change in route, and is not limited to a route contiguous with the original.

Global Lines challenges this interpretation of the meaning of "extension of route" and claims that Kleinschmidt should have been fully tested in all seven areas to determine his competence to pilot the Independence through Nawiliwili Bay because an endorsement for an entirely new route should not be considered merely an "extension of route." *See* Plaintiff's Opposition at 7–9. Global Lines advances general arguments that words and phrases in statutory or regulatory passages, not otherwise defined or elaborated upon, should be given their ordinary meaning in society. *See id.* at 6–11. This argument ignores the fact that the procedure utilized by the Coast Guard in Kleinschmidt's case is standard practice for all requests for additional endorsements, whether the new route is contiguous or not.

■ The Court agrees with the United States that "an agency's determination or choice of the subjects for examination for a particular pilotage endorsement is a discretionary decision of the most basic kind." Reply Memorandum of Defendant at 4–5, 83 Civ. 7012 (JMC) (filed S.D.N.Y. October 7, 1985); *see also United States v. Varig Airlines,* 104 S.Ct. 2755, 2769 (1984). In a case dealing with the FAA's certification program, the *Varig* Court held that "[w]hen an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind." *Id.* at 2768. An agency's role in certification procedures is "to promote safety ..., not to insure it." *Id.* at 2769.

Apparently, quite valid reasons exist for not requiring applicants for an additional endorsement to be tested in all seven areas, namely, that the areas left out are considered basic to the piloting trade and are presumed ingrained, e.g., "how to think clearly with respect to shoals, depth of water." Reply Memorandum at 6 n. 2 (quoting deposition testimony of Captain Sutherland). It is clear that the areas tested under section 10.05–43(b) for an extension of route focus on the local characteristics of the new route about to be undertaken, and therefore impliedly presume qualification in the basic piloting skills.

In this case, the Coast Guard complied with its own set of elaborate regulations regarding pilot endorsements. Ordinarily, an agency's interpretation of its own regulations is entitled to considerable weight. *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944). That the Coast Guard has chosen to interpret a pilot's request for an endorsement beyond his initial one as a request for an extension of route, and thus requiring only limited examination, falls within its discretion in carrying out its regulations. *See, e.g., Bearce,* 614 F.2d 556 (Coast Guard given discretionary authority to establish aids to navigation; decision not to erect a light at end of breakwater leading into harbor fell within discretionary function exception to the SIAA); *Eazor Express, Inc.,* 611 F.Supp. 197 (dredging operation supervised by Army Corps. of Engineers, but performed by independent contractor a discretionary function under the SIAA); *In re Ohio River Disaster Litigation,* 579 F.Supp. 1273 (government decision regarding placement, design and operation of dam discretionary function).

In reality, then, Global Lines' arguments are circuitous. Cognizant that the licensing of pilots by the Coast Guard is a discretionary function, and thus nonactionable, it seeks to subvert the regulations themselves in an attempt to show that the Coast Guard failed to follow them, thus leading to a conclusion of actionable negligence. However, Global Lines' only argument is its own view as to the common sense meaning of "extension of route" and does not

take into consideration the Coast Guard's reasons as to why pilots such as Kleinschmidt are not required to retake examinations covering the most basic aspects of piloting. The success of this argument would depend on the. Court's adoption of Global Lines' interpretation of Coast Guard regulations, as opposed to the interpretation and implementation employed by the Coast Guard itself. The Court declines to do so and holds that the decision to grant an endorsement to Kleinschmidt for Nawiliwili Bay was a discretionary function, and cannot form the basis for this claim.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss the complaint for lack of subject matter jurisdiction is granted. Fed.R.Civ.P. 12(b)(1). The Clerk of the Court is directed to enter judgment for the defendant and dismiss the complaint.

SO ORDERED.