Janis E. Schulmeisters, Admiralty Shipping Section, Dept. of Justice, New York City, for defendants.

**Harold ALBINDER, Plaintiff,**

v.

**UNITED STATES of America, Whitney Communications Corporation, Waterway Guide, Inc. and Boating Industry Magazine, Defendants.**

**No. 84 Civ. 9133(CES).**

United States District Court, S.D. New York.

Nov. 4, 1987.

## MEMORANDUM DECISION

STEWART, District Judge:

This action went to trial before the Court. The following constitute our findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

Plaintiff claims that the defendant United States[1] is liable for the sinking of his pleasure boat, the "Liari," on October 2, 1984. On that day at about 6:30 PM, the Liari attempted to enter the Intracoastal Waterway at the Elba Island Cut running south from the Savannah River in Georgia. It sank after it ran over rocks placed in the Savannah River by the Army Corps of Engineers in the 1880s as part of a group of wing dams and retaining walls erected for the purpose of directing river currents and silt. The rocks continue to serve navigational purposes since their presence assists in scouring the Savannah River channel. The rocks were submerged at the time of the accident, and were about 275 to 300 feet outside and to the southwest of the navigable channel in the Savannah river.

---

1. The other defendants have been dismissed, having entered into settlements with plaintiff.

At the time of the accident, plaintiff's hired captain Mark Gero had elected to steer a course from buoy number 35, a buoy marking the left or southern side of the navigable channel in the Savannah River, to Light Beacon number 2, which marked the entrance to the Elba Island Cut.

The rocks are not marked by any buoys or other navigational aids nor were they marked in the commercial chart used by Gero. This was the chart published by defendant Waterway Guide, Inc. for use in 1984 (Plaintiff's Ex. 1).[2] The rocks are marked in charts prepared by the U.S. Department of Commerce, National Oceanic and Atmospheric Administration. References to the rocks are also contained in the United States Coast Pilot, published by the U.S. Department of Commerce (Defendant's Ex. 301 at 222) and in the Local Notice to Mariners published by the Coast Guard (Plaintiff's Ex. 14 at 17). Gero who had no familiarity with the area, did not have these latter charts and publications on board the Liari at the time of the accident, but was relying on the Waterway Guide for navigation.

Navigational aids at the site were also available, which would have enabled the pilot of the Liari to proceed safely. The Savannah River channel was marked by buoys (numbers 35 and 36) and by range markers (for the "lower flats range") which led to the entrance to the channel of the Intercoastal Waterway. The channel of the latter was also marked by Light Beacons 2, 4 and 8.

We conclude that plaintiff was negligent in not having available up-to-date navigational guides made available to the public by the U.S. Government and in selecting a route which departed from the plainly indicated channels and resulted in the accident.

Because of the plaintiff's negligence and because the decision to mark or remove the rocks was within the government's discretion, we hold that the United States is not liable to the plaintiff.

Plaintiff claims that the Army Corps of Engineers should have either removed or marked the rocks because of their proximity to the Intracoastal Waterway. Plaintiff also claims that the Coast Guard had a duty to either mark these rocks or position its nearby navigational aids in a way that would ensure that mariners would miss the rocks. Plaintiff has dropped his claim that the Coast Guard negligently performed its rescue of the Liari.

Our jurisdiction over the subject matter of this suit derives from the Suits in Admiralty Act, 46 U.S.C. App. §§ 741–752. Under this Act, the United States has waived its sovereign immunity for certain maritime claims. Five courts of appeals have held that governmental activities that may be characterized as discretionary should be excepted from the Suits in Admiralty Act's general waiver of sovereign immunity. The cases are discussed in *Wiggens v. United States*, 799 F.2d 962, 964–65 (5th Cir.1986).[3] Two district courts in the Second Circuit have been persuaded by the reasoning of these cases, and have read a discretionary function exception into the Suits in Admiralty Act. *American Global Lines, Inc. v. United States*, 645 F.Supp. 783 (S.D.N.Y.1986); *Eazor Express, Inc. v. United States*, 611 F.Supp. 197 (E.D.N.Y. 1985). Many of the cases applying the discretionary function exception concern an official decision to mark or remove obstructions to navigation. In these cases, under circumstances similar to those in the suit before us, the decision was held to be discretionary.

> It has long been established that the Coast Guard has no statutory mandate to *ensure* the safety of all obstructions (citations omitted). As the district court in the instant case correctly observed, "there is no liability for failing to act." *Eklof Marine Corp. v. United States*, CV–84–2495 (E.D.N.Y.1984).

**2.** This chart, upon which Gero relied, contains the following note: "Because of continual changes in shorelines, channels, regulations, buoys, markers and other information, the publisher assumes no liability for omissions, errors, or alterations and advises that this Chartbook should not be relied upon for navigation."

**3.** *See also Eklof Marine Corp. v. United States,* 762 F.2d 200, 202 (2d Cir.1985) in which the Court said:

In *Wiggens, supra,* the Fifth Circuit held that the Army Corps of Engineers could not be held liable for failing to remove or mark submerged pilings outside the main channel in a lake. Particularly when objects that may partially obstruct navigation serve some important public purpose, failure to remove or mark them has been held to be within the discretion of the government and not actionable under the Suits in Admiralty Act. In *Williams v. United States,* 581 F.Supp. 847 (S.D. Ga. 1983), which was affirmed by the Eleventh Circuit "on the basis of the order of the district court," 747 F.2d 700 (11th Cir.1984) the district court found that the pilings or "dolphins" which caused the accident in that case were still used by vessels as a temporary tie-up in the waterway. The court accordingly held that the government's failure to take any action with respect to the dolphins was within the discretion of the Army Corps of Engineers. *See Bearce v. United States,* 614 F.2d 556 (7th Cir.1980), *cert. denied,* 449 U.S. 837, 101 S.Ct. 112, 66 L.Ed.2d 44 (1980); *Cf. Faust v. South Carolina State Highway Dep't,* 721 F.2d 934 (4th Cir.1983), *cert. denied,* 467 U.S. 1226, 104 S.Ct. 2678, 81 L.Ed.2d 874 (1984); *Magno v. Corros,* 630 F.2d 224 (4th Cir.1980), *cert. denied,* 451 U.S. 970, 101 S.Ct. 2047, 68 L.Ed.2d 349 (1981). In this case, the government presented evidence that the rocks that tore open the Liari's hull still serve to scour the channel of the Savannah River. However, even if they did not serve this legitimate public purpose, the rocks are sufficiently far away from the navigable channels in the River and Intracoastal Waterway to place their removal or demarcation within the government's discretion.

We also hold that the Coast Guard's placement of its navigational aids marking the channel of the Savannah River and the opening of the Elba Island Cut was not negligent. Plaintiff has not shown that the Coast Guard's navigational aids in the area of the accident are not placed according to established rules of navigation. Nor has the plaintiff shown that the aids are not well maintained. *Compare Indian Towing Co. v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955). The government is not liable for captain Gero's decision to leave the navigable channels for a short-cut over an area containing an obstruction clearly marked on government charts.

Accordingly, we hold that the defendant is not liable. Defendant may submit a judgment.

SO ORDERED.