**Harold ALBINDER, Plaintiff,**

v.

**UNITED STATES of America, Whitney Communications Corporation, Waterway Guide, Inc. and Boating Industry Magazine, Defendants.**

No. 84 Civ. 9133 (CES).

United States District Court,
S.D. New York.

Dec. 16, 1987.

On Motion for Reconsideration
Jan. 7, 1988.

John P. D'Ambrosio, P.C., Elmford, N.Y., for plaintiff.

U.S. Dept. of Justice by Janis E. Schulmeisters, New York City, for U.S.

## ORDER

STEWART, District Judge:

This action went to trial before the Court. We found for the government in a Memorandum Decision filed November 5, 1987, 685 F.Supp. 45; familiarity with the facts set out in that decision are assumed. Subsequently, the government submitted a proposed judgment that included the following paragraph:

FURTHER ORDERED that the defendant may include in its costs the expenses and per diem of defendant's counsel traveling to Savannah, Georgia in connection with the taking of depositions of Coast Guard personnel concerning the rescue aspects of the crew of the LIARI, particularly the depositions of Randolph Dodge, Todd Hiers, William A. Carson, Anthony T. Brown, and Lawrence A. Nations.

Plaintiff objected to this proposed imposition of costs, and we directed both parties to submit letters briefing the issue.

The government argues that costs should be imposed as sanctions under Fed.R.Civ.P. 11 [1] because plaintiff pursued a frivolous claim against the Coast Guard for negligent rescue of the Liari.[2] This claim was dropped on the eve of trial. The government claims that it was forced to send its attorneys to Savannah, Georgia to depose Coast Guard personnel in order to prepare a defense to the negligent rescue claim. We agree with the government that a "reasonable inquiry" would have revealed to plaintiff's counsel that this claim was not "well grounded in fact and ... warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Fed.R.Civ.P. 11.

■ While it is a statutory function of the Coast Guard to establish and operate rescue facilities, and Congress has provided that the Coast Guard "may" render aid to protect persons and property at any time such facilities are available, such legislation does not create an affirmative governmental duty to rescue a vessel in distress. 14 U.S.C. § 88; *United States v. Sandra & Dennis Fishing Corp.*, 372 F.2d 189, 195 (1st Cir.), *cert. denied*, 389 U.S. 836, 88 S.Ct. 48, 19 L.Ed.2d 98 (1967); *Frank v. United States*, 250 F.2d 178, 180 (3d Cir. 1957), *cert. denied*, 356 U.S. 962, 78 S.Ct. 1000, 2 L.Ed.2d 1069 (1958). The Coast Guard's duty in rescue situations is defined by the so-called "good samaritan doctrine." *Patentas v. United States*, 687 F.2d 707, 717 (3d Cir.1982); *Kurowsky v. United States*, 660 F.Supp. 442, 450 (S.D.N.Y. 1986). Once the Coast Guard has undertaken a rescue operation it must act with reasonable care. However, the Coast Guard is subject to liability only when it causes the parties being rescued to detrimentally rely on the Coast Guard's efforts, or when its failure to exercise due care otherwise increases the risk of harm. *Patentas*, 687 F.2d at 714; *Wellington Transportation Company v. United States*, 481 F.2d 108, 111 (6th Cir.1973); *United States v. Devane*, 306 F.2d 182, 186 (5th Cir.1962); *Kurowsky*, 660 F.Supp. at 450; *Miller v.*

---

**1.** Rule 11 states in relevant part:
  The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

**2.** The Liari's crew was rescued by the Coast Guard. Plaintiff's claim was based on the Coast Guard's failure to prevent the Liari from sinking.

*United States*, 614 F.Supp. 948, 954 (D.Me. 1985). Obviously, liability will not attach unless the Coast Guard's failure to exercise due care is a proximate cause of the injury or loss. *See, e.g., Miller*, 614 F.Supp. at 954.

Plaintiff's counsel claims that he amended the complaint to include a negligent rescue claim only after Mark Gero, the captain of the Liari, informed him that both pumps deployed by the Coast Guard rescue boat did not work. Plaintiff's attorney asserts that the claim is also supported by the fact that the Liari's salvors were able to tow the boat by plugging the gash in the Liari's hull and using a pump, demonstrating that the boat could have been saved by the Coast Guard's timely use of *its* pumps.

■ Under the good samaritan doctrine discussed above, these facts do not give rise to a negligent rescue claim. Plaintiff does not allege that the crew of the Liari decided to forego other avenues of rescue in reliance on the Coast Guard's efforts. Nor did the defective pumps increase the risk of harm. *See Patentas*, 687 F.2d at 717. Moreover, even if the Coast Guard breached its duty of reasonable care, its actions were not a proximate cause of the sinking of the Liari. The damage incurred by the Liari was severe, and by the time the Coast Guard arrived on the scene, the craft was already listing heavily to starboard. Within ten minutes of the Coast Guard's arrival, the Liari sank. Carson Deposition at 15–16, 20–21, 28–29.

Plaintiff relies on dicta in *United States v. Sandra & Dennis Fishing Corp.*, 372 F.2d 189, 197–98 (1st Cir.), *cert. denied*, 389 U.S. 836, 88 S.Ct. 48, 19 L.Ed.2d 98 (1967). Yet in one of the holdings in that case, the First Circuit stated: "How much equipment the Coast Guard is to possess ... must be for the government's uncontrolled discretion. We can recognize no obligation upon the government either to have [a rescue vessel] available, or to have had on board any particular equipment." *Id.* at 195. In this case, the Coast Guard owed no duty to plaintiff to have working pumps on board.

■ While we agree with the government that sanctions should be imposed for costs related to defending the negligent rescue claim, it appears that the government also conducted discovery related to plaintiff's other claims while in Savannah. Therefore, we think it appropriate that plaintiff pay only fifty percent of the government's expenses and per diem of its counsel traveling to Savannah, Georgia in connection with the taking of depositions of Coast Guard personnel concerning the rescue of the Liari's crew. This amount should be borne solely by the plaintiff's counsel. The government should submit a proposed judgment in which these expenses are itemized. Plaintiff's counsel will be given an opportunity to respond within ten days of service of this proposed judgment if he finds these expenses excessive.

SO ORDERED.

## ON MOTION FOR RECONSIDERATION

In a December 16, 1987 Order, we imposed sanctions on plaintiff's counsel for interposing a frivolous claim, dropped on the eve of trial, concerning the Coast Guard's alleged negligence in rescuing plaintiff's vessel. Counsel now moves for an Order granting reconsideration of the December 16 Order. In support of this motion, counsel claims that he received inadequate notice that the Court was considering Rule 11 sanctions. He also claims that the Court misinterpreted Rule 11's requirements. Finally, plaintiff's counsel has submitted evidence, most of which is not "newly discovered" under Fed.R.Civ.P. 60(b), that he claims proves that sanctions were not warranted. The motion is denied.

■ Counsel had adequate notice that this Court was considering imposing sanctions, and sufficient opportunity to explain why sanctions were not appropriate. *Cf. The Sanko Steamship Co. v. Galin*, 835 F.2d 51, 53 (2d Cir.1987). After this case was tried before the Court and we found for the government, we solicited letters from both sides concerning the imposition of costs on plaintiff for the government's preparation of its defense of the negligent rescue claim against the Coast Guard. Counsel now asserts that he "did not understand that the exchange of the letters

requested by this Court ... actually represented a motion for sanctions under Rule 11." This assertion is belied by counsel's December 10, 1987 letter to this Court arguing against sanctions, in which he stated: "I now learn, for the first time, from reading [the Assistant U.S. Attorney's] letter of November 25, 1987 that he seeks the counsel fees, costs and expenses incurred in taking testimony in Savannah as a *sanction* under Rule 11." (Emphasis in original).

Counsel also argues that Rule 11 contains three criteria for the imposition of sanctions and that a Court may not impose sanctions unless all three criteria are present in a given case. Because this Court made no finding that the pleading in question was "interposed for any improper purpose," Fed.R.Civ.P. 11, counsel argues that the imposition of sanctions was not warranted. The Second Circuit has made it clear that Courts need not make such a finding before imposing Rule 11 sanctions. The Rule is to be read disjunctively: "sanctions shall be imposed against an attorney and/or his client when it appears that a pleading has been interposed for any improper purpose, *or where*, after reasonable inquiry a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law. *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985) (emphasis in original). As is clear from our December 16, 1987 Order, we imposed sanctions relying on the second of these two independent grounds.

Finally, we find that none of the evidence proffered by plaintiff's counsel warrants reargument under Fed.R.Civ.P. 60(b).

The government should submit a judgment, and plaintiff may object to that judgment, as directed in our December 16, 1987 Order.

So Ordered.