Wit CARSON, Plaintiff,

and

Paces Ferry Action Committee, Inc.,
Intervenor Plaintiff,

v.

William H. ALVORD, Robert P. Boblett, D. P. Boothe, Jr., Ernest V. Buckman, Robert T. Cross, Victor A. Lalli, Royce N. Sanner, Craig R. Stapleton, Ridgeley P. Ware, as Trustees of IDS Realty Trust, A Business Trust Created under the laws of Massachusetts, Moon Landrieu, Secretary of Housing and Urban Development, and Ernest Barrett, George W. Lankford, Wit Carson, Butch Thompson, and Charles Ruff, in their official capacity as the Board of Commissioners of Cobb County, Georgia, Defendants.

Civ. A. No. C79–1937A.

United States District Court,
N. D. Georgia,
Atlanta Division.

March 20, 1980.

Gregory A. Griffin, Johnson, Griffin & Jones, Marietta, Ga., for plaintiff.

Curtis Anderson, Asst. U. S. Atty., Raymond C. Buday, Jr., Associate Regional Counsel, U. S. Dept. of Housing and Urban Development, of counsel, Atlanta, Ga., for Moon Landrieu.

Trammell E. Vickery, J. Allen Maines, Jane C. Fugate, Hansell, Post, Brandon & Dorsey, Atlanta, Ga., for IDS Realty Trust.

Hylton B. Dupree, Jr., Marietta, Ga., for Paces Ferry Action Committee, Inc.

Ben F. Smith, Marietta, Ga., for Cobb Co.

### ORDER

VINING, District Judge.

This is a suit seeking to enjoin the Department of Housing and Urban Development from guaranteeing certain financing and to enjoin the trustees of IDS Realty Trust from obtaining financing for a proposed 172 unit multi-family housing project in Cobb County, Georgia, known as Paces Ferry Woods. A temporary restraining order was granted on October 16, 1979, and was dissolved on October 24, 1979. On October 25, Paces Ferry Action Committee, Inc., obtained a temporary restraining order from the Superior Court of Cobb County, restraining Cobb County from issuing a building permit for Paces Ferry Woods. By order dated November 5, 1979, this court added Paces Ferry Action Committee, Inc., and the Board of Commissioners of Cobb County, as parties to the instant action and enjoined Paces Ferry Action Committee from proceeding in the Cobb County Supe-

rior Court action. Pending before the court are HUD's and IDS's motions for summary judgment.

An overview of the financing scheme and the federal regulations provides the background necessary to a resolution of the legal issues in this controversy. The financing for the Paces Ferry Woods project is to be through a loan from a private institution secured by a mortgage insured by HUD under 12 U.S.C. § 1715*l*(d)(4). This is an unsubsidized program for moderate income families and is the most common method of financing made in connection with "Section 8" new construction housing; the maximum insurable mortgage rate is 90% of the Secretary's estimate of the replacement cost of the project (as distinguished from the 12 U.S.C. § 1715*l*(d)(3) program in which the maximum mortgage amount can be 100% of the estimated replacement costs). The interest rate in the "(d)(4)" program is not subsidized by HUD. Although HUD does establish maximum interest rates for the program in accordance with 12 U.S.C. § 1709–1, the actual interest rate is set by the conventional lender.

The development process for this kind of project typically commences with an application by a developer for a "Commitment for Mortgage Insurance" pursuant to 24 C.F.R. § 21.502. After review by HUD, a commitment is issued, committing HUD to insure the mortgage subject to the borrower's satisfying the various regulations and requirements. Once those requirements are met, the next step is normally an initial closing at which HUD endorses the note to the extent of construction advances.

Upon completion of the project, a final closing is held, at which HUD endorses the note for the full 90% of the insurable mortgage. Customarily the note is sold to the Federal National Mortgage Association or the Government National Mortgage Association as a part of those entities' functions of purchasing HUD-insured mortgages.

The HUD regulations for the program involved in the instant case are found at 24 C.F.R. Part 880 and prescribe the process for development of these projects. The process is initiated by an advertisement informing developers that HUD funds are available for Housing Assistance Payments Contracts in certain areas. 24 C.F.R. § 880.203. As a result of the Notification of Funds Availability developers will request and obtain the "developer's packet" containing certain information regarding HUD requirements. 24 C.F.R. § 880.204. Developers will then prepare and submit preliminary proposals, showing the proposed location, size, intended rents, and other information concerning the proposed project. 24 C.F.R. § 880.205. These proposals are then reviewed by HUD in accordance with the technical, financial, and other requirements of 24 C.F.R. §§ 880.206, .207, and .208.

The developers with acceptable preliminary proposals then submit final proposals pursuant to 24 C.F.R. § 880.209. If the final proposal is acceptable and if the required architect's certification is submitted, HUD and the developer will enter into an "Agreement to Enter into a Housing Assistance Payments Contract" pursuant to 24 C.F.R. § 880.214. Upon completion of the project, assuming that construction is satisfactory to HUD, the parties enter into the actual Housing Assistance Payments Contract pursuant to 24 C.F.R. § 880.217.

The project which is the subject matter of this litigation is a multi-family project to be financed under the "(d)(4)" program and will include 35 units to be assisted under the Section 8 program. The project began in response to a "Notification of Funds Availability" published by HUD's Atlanta Area Office soliciting preliminary proposals for construction housing in various specified areas of Georgia, including Cobb County. On January 31, 1979, Banco Mortgage Company, on behalf of IDS Realty Trust, submitted a preliminary proposal for the Paces Ferry Woods project. Among the material submitted were the following:

(1) Application for mortgage insurance under 12 U.S.C. § 1715*l*(d)(4).

(2) Evidence of availability of utilities.

(3) Evidence of permissive zoning.

(4) Evidence of state and regional clearinghouse notification.

(5) Evidence of need for the housing. In accordance with HUD procedures under 24 C.F.R. § 880.201(e)(1), a copy of the preliminary proposal was sent to state and regional clearinghouses for review and comment, the regional clearinghouse in this case being the Atlanta Regional Commission. In its response the Atlanta Regional Commission noted that notice of the proposal had been sent to the Mayor of Smyrna, the Chairman of the Cobb County Commission, and the Superintendent of the Cobb County Schools. The Commission reported that no comments were received from those officials, that the project was in compliance with the housing goals and objectives of the Regional Housing Plan, and that the project was not inconsistent with any other Atlanta Regional Commission Development guides. The state-level response contained no objections, and it indicated that the project was consistent with state policies, plans, and objectives.

On February 27, 1979, the HUD Area Office sent a letter to the chairman of the Cobb County Board of Commissioners offering that body an opportunity to comment on the project; however, no response to this letter was ever received.

On April 20, 1979, the preliminary proposal was reviewed by the Economic and Market Analysis Division of the HUD Atlanta Area Office. After investigating the proposal, HUD determined, *inter alia*, that a market existed for the proposed units and issued a commitment for the insurance of advances by Banco.

■ Although this court determined in its October 24, 1979, order that the plaintiffs have standing to raise the question of compliance with the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.*, this court has not directly addressed the issue of whether the plaintiffs have a cause of action under NEPA, the National Historic Preservation Act, 16 U.S.C. § 470, *et seq.*, or the Archeological and Historic Preservation Act, 16 U.S.C. § 469 *et seq.* It is that question which is now before the court. As a preliminary matter the court notes the direction given by the Supreme Court in a recent decision: "The question of the existence of a statutory cause of action is, of course, one of statutory construction" and the "central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action." *Touche Ross & Co. v. Redington,* 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 2489, 61 L.Ed.2d 82 (1979).

■ The plaintiffs have not cited to this court anything in the aforementioned legislative enactments nor anything in the legislative history of those enactments which would indicate that Congress intended to provide a private cause of action for violation of those acts. The plaintiffs seek to satisfy the four-point test of *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), by arguing that the provisions of the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.,* in providing for judicial review of agency actions creates a private cause of action. This argument is not persuasive. The plaintiffs have confused the implied cause of action requirements of *Cort v. Ash* and the Administrative Procedure Act; that case and that law provide for two distinct remedies. *Cort v. Ash* recognizes that in some instances a cause of action can be inferred from a statute so that a private individual can seek damage, injunctive, or declaratory relief. The Administrative Procedure Act, however, simply provides a process by which agency actions can be reviewed and does not give a person the right to seek injunctive or declaratory relief for alleged violations of agency regulations or of the underlying statute. *Chrysler Corp. v. Brown,* 441 U.S. 281, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979) (Freedom of Information Act). Indeed, the Secretary of the Interior is given enforcement powers with respect to the Archeological and Historic Preservation Act and the National Historic Preservation Act. The court also notes that none of the acts relied upon by the plaintiffs "confers rights on private parties nor proscribes any conduct as unlawful." 442 U.S. at 569, 99 S.Ct. at 2486.

■ Being mindful of the factors set forth in *Cort v. Ash, supra,* as discussed in *Touche Ross, supra,* the court is not convinced that any of the statutes previously mentioned afford the plaintiffs a cause of action in this case. (Insofar as the plaintiffs seek to infer a cause of action from the various regulations they have cited, they must fail in their attempt; a cause of action cannot be created by regulations but can come only from the underlying statutory authority for those regulations.) Any "cause of action" that the plaintiffs might have is strictly limited to their ability to seek review under the Administrative Procedure Act, and the scope of review under that Act is limited by 5 U.S.C. § 706. That section provides that the reviewing court may set aside any agency action, finding, or conclusion found to be

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege or immunity;

(C) in excess of statutory jurisdiction, short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

The allegations of the plaintiffs fall substantially within subsections (A) and (D) of the above provision.

The legislative enactments involved in the case *sub judice* evidence a Congressional intent to promote efforts that will prevent damage to the environment and which will preserve and protect those sites which are of historical significance. To this end, Congress has given to various federal departments and agencies both the authority and mandate to implement the code provisions pursuant to that legislative intent; and these departments and agencies have promulgated regulations to effect the intent of Congress. The gravamen of the plaintiffs' complaint is that HUD failed to follow the applicable regulations in approving the Paces Ferry Woods project.

■ In reviewing HUD's action in this case, the court is not free to substitute its own judgment for that of HUD's. The very purpose of the regulations is to provide for executive review of the various federal projects and federal involvement in projects which would affect the environment and historical sites instead of requiring judicial determination of the environmental and historical merits or demerits of each such project. Even though this court might have preferred different or even better environmental and historical investigations into the project, unless the defendants "have arbitrarily and capriciously misstated the facts" or provided statements that are "consciously slanted or biased" from which the court could infer "intentional misrepresentation," the court should not overturn the agency's or department's findings. *See Environmental Defense Fund, Inc. v. Corps of Engineers,* 342 F.Supp. 1211, 1214 (E.D. Ark.1972).

■ With respect to the specific project involved in the instant case, HUD contacted both the state and regional clearinghouses for review and comment pursuant to 24 C.F.R. § 880.208(e). Even though invited to comment, neither the Mayor of Smyrna, the Chairman of the Cobb County Board of Commissioners, nor the Superintendent of the Cobb County Schools responded. Although the state clearinghouse submitted a memorandum with what is apparently boilerplate language that "there still exists a probability that cultural resources of an archeological nature are present, which may be eligible for inclusion in the National Register" and that "it has been determined that there does also exist a potential for archeological property being affected" that same memorandum stated that the clearinghouse had "determined that this project will have no effect to [*sic*] historic, structural properties eligible for inclusion in the National Register." Furthermore, no evidence of any historic or archeological re-

sources was ever submitted by the state clearinghouse. This court holds that absent some evidence submitted by the state clearinghouse HUD had no obligation to perform any in-depth archeological study based upon the mere potential for such resources as contained in the standard language from the state clearinghouse.

The plaintiffs' contention that no need exists for the housing units involved in the case *sub judice* is foreclosed by HUD's finding that the project is "approvable from a market standpoint." That finding was based upon a study made by HUD's Economic and Market Analysis Division, dated April 20, 1979. The plaintiffs have presented no evidence that this study was consciously slanted or biased, and the court may not substitute its judgment (or that of the plaintiffs') for HUD's, absent such evidence.

The plaintiffs also contend that the noise standards found in 24 C.F.R. part 51 will not be met. Specifically, the plaintiffs contend that a 24-hour professional survey should have been conducted. However, such survey need be made only when application of the HUD noise assessment guidelines results in a finding that the site is borderline or questionable as to noise. HUD's assessment did not find that the noise level was questionable. Indeed, 24 C.F.R. § 51.101(a)(8) provides that sites with a day/night average sound level of 65 decibels and below are acceptable. Even though the plaintiffs complain about the quality of HUD's noise assessment, the expert employed by the plaintiffs, who performed a 24-hour survey, found the day/night average sound level to be 62 decibels, a figure that would meet the requirements of 24 C.F.R. § 51.101(a)(8).

Although the plaintiffs have submitted an affidavit from a person who "has explored various areas of land in Cobb County for the purpose of locating and obtaining Civil War relics and artifacts" and who has found several Civil War relics and artifacts on the Paces Ferry Woods project, a study conducted by Cultural Resource Services, Inc., for HUD concludes as follows:

The survey area contains no evident prehistoric sites and no Civil War-related materials or earthworks. Historic materials exist in the form of two house sites, related outbuildings, and two streamdams. None of these historic features, especially in view of their present state, could be considered culturally significant. The cultural resources of the area cannot be recommended for inclusion in the National Register of Historic Places.

As stated previously, it is not this court's function to determine which of various surveys or studies is preferable. The mere fact that one survey or study may differ from that which HUD used to form its conclusions does not show that HUD's findings were "consciously slanted or biased" or that HUD acted arbitrarily, capriciously, or without observing the procedure required by law. *See Environmental Defense Fund, Inc. v. Corps of Engineers,* 342 F.Supp. 1211 (E.D.Ark.1972). The court holds that HUD's findings are proper and that none of the elements of 5 U.S.C. § 706 is present in this case.

For the foregoing reasons, the motions of the trustees of IDS Realty Trust and of Moon Landrieu are GRANTED and the complaint is hereby dismissed.

SO ORDERED.