**BREWERY DISTRICT SOCIETY, et al., Plaintiffs,**

v.

**FEDERAL HIGHWAY ADMINISTRATION, et al., Defendants.**

No. C2–98–75.

United States District Court, S.D. Ohio, Eastern Division.

Feb. 19, 1998.

Clifford O. Arnebeck, Jr., Columbus, OH, for Plaintiffs.

Deborah F. Sanders, U.S. Attorney's Office, Columbus, OH, for Defendants.

## ORDER

MARBLEY, District Judge.

## I. INTRODUCTION

This matter is before the Court on the of Defendants' Motion to Dismiss Plaintiffs' Complaint and Memorandum on Jurisdiction (doc. 6), Plaintiffs' Memorandum Regarding the Private Right of Action Pursuant to 16 U.S.C. § 470 w–4 (doc. 7), Plaintiffs' Memo-

randum Contra Defendants' Motion to Dismiss (doc. 9), Defendants' Reply to Plaintiffs' Memorandum Contra (doc. 10), and Plaintiffs' Motion for Leave to File, Instanter, Memorandum Contra Defendants' Reply to Defendants' Motion to Dismiss (doc. 14). Upon consideration of all of the above, and the record, and for the reasons set forth below, the Court hereby **DENIES** in part and **GRANTS** in part Defendants' Motion to Dismiss, and **GRANTS** Plaintiffs' Motion for Leave to File, Instanter, Memorandum Contra Defendants, Reply to Defendants' Motion to Dismiss.

## II. *BACKGROUND*

Plaintiffs, Brewery District Society, Dennison Place Association and Malcolm Cochran (together, "Plaintiffs"), have sued Defendants, Federal Highway Administration ("FHA") and United States Environmental Protection Agency ("USEPA"), under Section 110 of the National Historic Preservation Act ("NHPA"), 16 U.S.C § 470 *et seq.* (1994), requesting both Declaratory and Injunctive Relief. Plaintiffs' claim is premised upon section 470h–2 (k) of the NHPA which provides:

> **Assistance for adversely affected historic property**
>
> ▓ Each Federal agency shall ensure that the agency will not grant a loan, loan guarantee, permit, license, or other assistance to an applicant who, with intent to avoid the requirements of section 470f of this title, has intentionally, significantly, adversely affected a historic property to which the grant would relate, or having legal power to prevent it, allowed such significant adverse effect to occur, unless the agency, after consultation with the Council, determines that circumstances justify granting such assistance despite the adverse effect created or permitted by the applicant.

Plaintiffs allege that the City of Columbus ("City") has intentionally adversely affected a historic property, and has done so with intent to avoid the requirements of section 470f of the NHPA.[1] Cmplnt., pp. 3–4, ¶¶ 8–9. Further, Plaintiffs allege that the City of Columbus "is currently engaged in a joint planning process with ... a variety of federal agencies with respect to the arena project," and that Defendant FHA is one of those agencies "directly or indirectly currently involved." Cmplnt., p. 5, ¶¶ 12, 15. Read liberally, Plaintiffs Complaint states that the FHA is designing, jointly with the City, the exit and entrance ramps of the Spring–Sandusky Interchange ("SSI") section of Interstate Highway 670 in order to facilitate the ingress and egress to and from the parking area for the arena project, "which ... will be located at the former Ohio pen site." Cmplnt., p. 5, ¶ 15.

In addition, Plaintiffs allege that the USEPA "is being asked to grant permits or waivers of environmental impact statements in order to facilitate the completion of the Spring Sandusky Interchange in time to accommodate the completion of the downtown arena." Cmplnt., p. 6, ¶ 16. At the evidentiary hearing held on Plaintiffs' request for injunctive relief, however, Plaintiffs clarified that their allegation of USEPA conduct addressed future action, such as "sign-offs" or "approvals," that the USEPA *may* be asked to perform, contingent upon certain events happening, such as, e.g., spills. See, January 29, 1998 Preliminary Injunction Hearing Transcript, pp. 48, 59–63, 67–68, 74–75, 83–85, 87–91, 96–97. Plaintiffs later clarified that most of their allegations of FHA conduct and all allegations regarding USEPA conduct related to the pen site are speculative, involving only future conduct which is contingent upon events which may or may not

---

1. Section 470f of the NHPA is more commonly known as the section 106 review process. This statute imposes affirmative obligations on federal agencies and those involved with any federal undertakings to, "prior to the approval ... of the expenditure of any Federal funds on the undertaking ... take into account the effect of the undertaking ..." on any historic properties and "afford the Advisory Council ... an opportunity to comment...." 16 U.S.C. § 470f. The purpose of the provision is to promote a cooperative exchange of information and to provide an opportunity for the government to coordinate the activities and efforts of federal agencies and private parties in federal undertakings that affect historic properties. *Waterford Citizens' Ass'n. v. Reilly*, 970 F.2d 1287, 1291 (4th Cir.1992).

occur.[2] Plaintiffs' Memorandum Contra Defendants' Motion to Dismiss, pp. 3–6.

Plaintiffs' allegations also include speculation that the FHA *"may* be lending assistance or about [sic] to be asked to lend assistance to the City" in connection with the arena project. Cmplnt., p. 3, ¶ 6 (emphasis added). In addition, Plaintiffs allege, among other things, that there *"may* be other federal agencies providing assistance or permits" in connection with the City's plans for an arena. Cmplnt., p. 6, ¶ 17 (emphasis added).

Plaintiffs ask this Court to enjoin the alleged current and future conduct of Defendants related to the arena project. Specifically, Plaintiffs request that this Court declare "the legal rights and duties of the federal agencies [under the Act] with respect to the arena project" and enjoin Defendants from providing any "assistance or permits to the City of Columbus in connection with the arena project unless and until so authorized by the Advisory Council on Historic Preservation." Cmplnt., pp. 6–7, ¶¶ 19, 1.

It is evident from Plaintiffs' Complaint that the motivation behind their action is to ultimately deter the City of Columbus from continuing the demolition of the old Ohio penitentiary without satisfactorily completing the section 106 review process under the NHPA. While Plaintiffs have not sued the City of Columbus in this action, Plaintiffs are not reticent about stating that, by seeking to restrain Defendants from providing any assistance to the City in connection with the arena, they wish to make it "economically infeasible for the City ... to proceed with the demolition ... without compliance with section 106 of the NHPA." Cmplnt., p. 6, ¶ 18. Despite pronouncements by the City to the contrary, Plaintiffs believe that if the section 106 review process was satisfactorily completed, the City would be persuaded not to proceed with the demolition of the remaining buildings at the Ohio pen. In sum, Plain-

tiffs seek declaratory and injunctive relief against the named federal agencies in order ultimately to deter the City from completing the demolition.

## III. *ANALYSIS*

■ Defendants' Motion to Dismiss is based on several grounds, including lack of subject matter jurisdiction under Rule 12(b)(1) and failure to state a claim upon which relief may be granted under 12(b)(6).[3] Before determining whether Plaintiffs have failed to state a claim upon which relief may be granted, however, the Court must first decide whether it has subject matter jurisdiction. *City of Heath, Ohio v. Ashland Oil, Inc.,* 834 F.Supp. 971, 975 (S.D.Ohio 1993) (citing *Moir v. Greater Cleveland Regional Transit Authority,* 895 F.2d 266, 269 (6th Cir.1990)). To survive a motion to dismiss on the basis of jurisdiction, Plaintiff must prove that the Court has jurisdiction to hear the matter. *Rogers v. Stratton Indus., Inc.,* 798 F.2d 913, 915 (6th Cir.1986).

When it appears that the Court lacks jurisdiction of the subject matter, the Court must dismiss the action. Fed.R.Civ.P. 12(h)(3). However, if the Court determines that it has subject matter jurisdiction, it must determine whether, accepting all of Plaintiffs' allegations as true, it is beyond doubt that Plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. *City of Heath,* 834 F.Supp. at 975 (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Further, the factual allegations of the complaint must not only be presumed true, but also liberally construed in favor of the plaintiff. 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1357, p. 304 (1990). The plaintiff is entitled to all favorable inferences which may be drawn from those allegations. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

---

**2.** Plaintiffs allege that "permits under the Clear Water Act may be required" and that "a U.S. EPA sign off would be required at some point in the remediation process" at the pen site. Plaintiffs' Memorandum Contra Defendants' Motion to Dismiss, pp. 5–6.

**3.** At the evidentiary hearing, Defendants abandoned their argument that Plaintiffs' Complaint should be dismissed on the basis of insufficiency of process because any deficiency in service had been cured.

### 1. *Jurisdiction*

Defendants argue that Plaintiffs lack standing to sue because there is no case or controversy before this Court. More specifically, Defendants argue that all of Plaintiffs' allegations of injury are nothing more than conjecture and speculation regarding actions that may or may not occur in the future. Thus, Defendants argue that Plaintiffs have not alleged a sufficient injury or threat of injury to meet the standing requirements of Article III.

█ Of course, this Court is mindful that the concept of standing to sue is at the core of the case-or-controversy requirement of Article III of the Constitution. *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). The Supreme Court has consistently held that standing has three elements which a party invoking federal jurisdiction (in this case, Plaintiffs) must establish:

> First, the plaintiff must have suffered an 'injury-in-fact'—an invasion of a legally-protected interest which is (a) concrete and particularized and (b) 'actual or imminent, not conjectural or hypothetical.' Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly ... traceable to the challenged action of the defendant, and not ... the result of the independent action of some third party not before the court.' Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citations omitted). Plaintiffs meet these three standing requirements with their claim against Defendant FHA, but not with their claim against Defendant USEPA.

Defendants argument that all of Plaintiffs' allegations are speculative fails to consider Plaintiffs' allegations of current or imminent FHA conduct, which Plaintiffs allege violates the NHPA. Cmplnt., pp. 5–6, ¶¶ 12, 15. Plaintiffs allege that the FHA is currently involved in a joint planning process with the City. Plaintiffs allege that this conduct is or will result in "assistance" that relates to the pen site, which is prohibited under section 470h–2(k) without the approval of the Advisory Council. Thus, Plaintiffs allege that the federal agency has violated the statute, and as "interested persons" under the Act, they seek redress. With these allegations, Plaintiffs allege a sufficient injury in fact to meet the first standing requirement.

█ As for the second and third requirements, Plaintiffs' alleged injury—that the FHA has violated or is about to violate the NHPA by providing assistance to the City which relates to the arena project and Ohio pen site—can be fairly traced[4] to the conduct of the FHA, and can be redressed by a judicial decision enjoining such assistance. Plaintiffs thus meet all the elements necessary to establish standing under Article III of the Constitution. *See Allen v. Wright*, 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). Therefore, this Court is satisfied

---

4. Admittedly, the Complaint can be read to allege that Plaintiffs' injury is really the City's continued demolition of the remaining buildings at the pen site without completing the section 106 review process. Because the City is not a party to *this action, it is axiomatic that this Court has no* jurisdiction to order the City to stop the demolition or to complete the section 106 review process with regard to the pen site. *See, e.g., Ely v. Velde*, 451 F.2d 1130 (4th Cir.1971) (claim under 16 U.S.C. § 470 does not extend to actions against nonagency defendants). Defendants argue that this alleged injury, therefore, is not causally connected to the conduct complained of by the Plaintiffs because it is "the result of the independent action of some third party not before the court."

However, this argument still begs the question whether this alleged injury—the intentional destruction of a historic property and intentional avoidance of the section 106 review process by a non-party—is "fairly traceable" to the challenged action of Defendant FHA—providing assistance to the non-party that relates to the historic property without first consulting with the Advisory Council. This Court is of the opinion that, by enacting this amendment in 1992, Congress linked the alleged FHA conduct challenged here with the intentional destruction of historic properties by third party "applicants" for federal agency assistance. Therefore, even with this reading, Plaintiffs have Article III standing.

that it has jurisdiction over Plaintiffs' claim as it relates to the FHA.[5]

▮▮▮ With respect to this Court's jurisdiction over the claim against the USEPA, this Court finds that Plaintiffs' allegations are too hypothetical or conjectural to meet the Article III standing requirements. Plaintiffs' allegations in paragraphs 6, 16 and 17 of their Complaint, which speculate that Defendant USEPA or some other federal agency "may be asked to provide assistance" to the City, and the allegations presented at the hearing on injunctive relief,[6] are just the sort of speculative allegations of harm prohibited by standing requirements. *See Adult Video Ass'n. v. U.S. Dept. of Justice,* 71 F.3d 563, 567 (6th Cir.1995). Plaintiffs must show a more immediate threat of harm than merely alleging that some federal agency *may be asked* at some point in the future to assist the City with the arena project. *Id.*

Similarly, other allegations in the Plaintiffs' Complaint, such as paragraphs 14, 19, and 20, support a request that is simply not ripe for this Court's adjudication. Plaintiffs ask this Court to declare that Defendants and other federal agencies may not provide assistance to the City which would relate to the pen site without first consulting with the Advisory Council. In fact, Plaintiffs argue that it is "not their burden to show the near-term likelihood of federal agency assistance in order for the statute" to be given effect. Plaintiffs' Motion Contra Defendants' Motion to Dismiss, p. 3. However, this Court disagrees.

Section 470h–2(k) requires, at a minimum, that the City be an "applicant" for "a loan, loan guarantee, permit, license, or other assistance" before the statute's obligations on the federal agencies are triggered. It would be premature, therefore, for this Court to entangle itself in an abstract disagreement about whether the federal agencies have satisfied or should satisfy their obligation to consult with the Advisory Council before their obligation to do so has been triggered, i.e., before the agencies have been asked by the City to provide something under the statute which triggers their obligation. Thus, to the extent that the allegations in Plaintiffs' Complaint can be read to request a declaration based upon contingent future events that may not occur as anticipated, the request is denied as premature or not yet ripe. *See, Thomas v. Union Carbide Agr. Prods. Co.,* 473 U.S. 568, 580–1, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985). Since Plaintiffs' claim against the USEPA is of this nature, the Court hereby **GRANTS** Defendants' Motion to Dismiss that claim.[7]

### 2. *Private Cause of Action under NHPA*

Defendants next argue that even if this Court has jurisdiction over Plaintiffs' claim, then Plaintiffs have failed to state a claim upon which relief can be granted because the NHPA does not provide for a private cause of action against Defendants. Defendants contend that the only action available to Plaintiffs emanates from the Administrative Procedures Act ("APA"). Under the APA, federal courts have the power to review and set aside "final agency action" if the action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §§ 704, 706(2). Defendants argue that Plaintiffs do not challenge a final agency action, but only an action which has yet to be taken, and thus the case should be dismissed.[8] Defendants also argue that the final agency action which Plaintiffs challenge—approval of the Spring–Sandusky Interchange—occurred in 1983, and thus the six year statute of limitations has long since passed. *See Sierra Club v. Slater,* 120 F.3d 623, 631 (6th Cir.1997) (six

---

**5.** Plaintiffs' Motion for Leave to File Instanter Memorandum Contra Defendants' Reply was unopposed. In addition, the Memorandum Contra, while not adding significantly to this issue, reinforces this finding.

**6.** No presumptive truthfulness applies to these factual allegations when the Court must determine a factual attack on subject matter jurisdiction. *Ohio Nat. Life Ins. Co. v. U.S.,* 922 F.2d 320, 325 (6th Cir.1990).

**7.** It is telling that Plaintiffs' Memorandum Contra Defendants' Reply conspicuously fails to mention Defendant USEPA.

**8.** This argument has been adequately addressed above within the Court's discussion on jurisdiction.

year statute of limitations under 28 U.S.C. § 2401(a) is applicable to actions brought pursuant to the APA).

Defendants cite two district court cases in support of their contention that a private right of action under NHPA does not exist outside of the APA: *Carson v. Alvord*, 487 F.Supp. 1049 (N.D.Ga.1980); and *National Trust for Historic Preservation v. Blanck*, 938 F.Supp. 908 (D.D.C.1996). However, neither of these cases has been cited by any other federal court for their holdings in this context. In addition, the *Carson* case pre-dated the enactment of section 305 of the NHPA, and the *Blanck* case has been appealed.

■ Moreover, Plaintiffs point this Court to a greater weight of authority, which holds that a private right of action against an agency does indeed arise under section 305 of the NHPA, 16 U.S.C. § 470w–4. Specifically, these cases hold that 16 U.S.C. § 470w–4 provides for the NHPA to be privately enforced "in any civil action brought in any U.S. District Court by any interested person." *See Tyler v. Cisneros*, 136 F.3d 603, 608, (9th Cir.1998); *Boarhead Corp. v. Erickson*, 923 F.2d 1011, 1017 (3d Cir.1991); *Bywater Neighborhood Ass'n. v. Tricarico*, 879 F.2d 165, 167 (5th Cir.1989), *cert. denied*, 494 U.S. 1004, 110 S.Ct. 1296, 108 L.Ed.2d 474 (1990); *Vieux Carre Property Owners, Residents & Assocs., Inc. v. Brown*, 875 F.2d 453, 458 (5th Cir.1989), *cert. denied*, 493 U.S. 1020, 110 S.Ct. 720, 107 L.Ed.2d 739 (1990); *North Oakland Voters Alliance v. City of Oakland*, No. C–92–0743 MHP, 1992 WL 367096, (N.D.Cal. Oct. 6, 1992). This Court finds this line of authority persuasive, and therefore holds that Plaintiffs have a private right of action in this case against Defendant FHA under the NHPA to ensure compliance with the provisions of that statute.[9]

### 3. *Failure to Join Necessary Party*

■ Finally, Defendants argue that Plaintiffs have failed to join a necessary party—the City of Columbus—under Fed.R.Civ.P. 19(a) because complete relief cannot be afforded to the Plaintiffs by the present par-

ties. While this Court is well aware that the federal agency defendants do not have the power to prevent the City from destroying the remaining buildings on the pen site, that fact alone does not render the City a necessary party under Rule 19. This Court theoretically can provide Plaintiffs the relief they request: to enjoin the FHA from providing assistance which is prohibited under section 470h–2(k), and can declare the rights, duties and responsibilities of the remaining parties in this litigation. Indeed, this Court has the power, under section 470h–2(k), to enjoin federal agencies from providing the City, without first consulting the Advisory Council, any assistance which has been applied for by the City and which relates to the pen site.

Plaintiffs may desire to stop the ongoing demolition through this litigation. But this motivation is irrelevant under Rule 19. Moreover, this Court has earlier ruled in a related case that it had no jurisdiction to either stop the City from demolishing the pen buildings or to force the City to complete the section 106 review process to the Plaintiffs' satisfaction. *See, American Inst. of Architects v. City of Columbus*, No. C2–98–048 (January 16, 1998 Opinion and Order). Therefore, Plaintiffs failure to join the City of Columbus as a defendant to this action is not fatal to their action.

### IV. CONCLUSION

For the foregoing reasons, this Court hereby DENIES in part and GRANTS in part Defendants' Motion to Dismiss. Plaintiffs' claim against Defendant USEPA is hereby dismissed. This case may proceed on Plaintiffs' claim that the FHA has violated or is about to violate section 470h–2(k) of the NHPA by granting, without first consulting with the Advisory Council on Historic Preservation, some form of assistance to the City of Columbus which relates to the pen site, and for which the City has applied.

**IT IS SO ORDERED.**

---

9. Defendants' arguments regarding the applicable standard of review and the statute of limita-   tions are inapposite.